# THE STATE ex rel. THE CONTINENTAL INSURANCE COMPANY vs. DOYLE, Secretary of State.

FOREIGN INSURANCE COMPANY. *(1) When revocation of license imperative. (2) Legal powers of agent appointed to receive service of process.* MANDAMUS: *(3) Writ granted without notice to insurance company. (4) When not discretionary.*

1. Where an action commenced in a court of this state, against a foreign insurance company, is in fact removed to a federal court, by petition for that purpose, in the name of such corporation, presented to the state court by its attorney of record, the statute (sec. 1, ch. 64 of 1872) makes it the imperative duty of the secretary of state to revoke the company's license; and this court must enforce that duty, if neglected, by *mandamus*, even though it should appear that such removal was procured by a local agent or officer of the corporation not expressly authorized to apply for it, and without the knowledge and against the wishes of the principal officers of such corporation.

2. The attorney of a foreign insurance company appointed in this state pursuant to sec. 22, ch. 56 of 1870, stands here, for all the purposes of his appointment, *for the corporation*, and possessed (as between him and the state), of all its power in the disposition of process and control of the actions instituted thereby.

3. As the statute requires the license of a foreign insurance company, upon violation of its conditions, to be revoked *without notice to the company*, a *mandamus* to compel such revocation will be granted without requiring the company to be made a party to the suit.

4. Courts have *discretion* in issuing writs of *mandamus* in aid of private right, but not where the writ is invoked on behalf of the state, as a pure prerogative writ, in matters *publici juris*.

APPLICATION for a *Mandamus*.

After the license of the *Continental Insurance Company* of the city of New York, to transact business in this state, had been revoked by the secretary of state of Wisconsin, in accordance with the order made in the foregoing action of *The State ex rel. Drake v. Doyle*, that company presented a petition to this court for a writ of *mandamus*, commanding said secretary of state to cancel or annul the order of revocation, and that the petitioner might be restored to all its rights and

State ex rel. Continental Insurance Company vs. Doyle, Secretary of State.

authority to transact business in this state which it possessed before such revocation. The petition stated, in substance, as grounds for such relief: 1. That the removal of the action of Drake against said company, from the Winnebago county circuit court to the United States circuit court for the eastern district of Wisconsin, mentioned above (p. 178), was not authorized or approved by the petitioner, and the fact of such removal was not brought to the knowledge of the superintendent of the western department, whose office is in Chicago, nor to the knowledge of any officer of said company connected with the principal office in the city of New York, until long after such action had been so removed, and had been settled and discontinued, nor until after the application had been made to this court for a *mandamus* to compel the secretary of state to revoke the petitioner's license. 2. That Mr. Hathaway, the petitioner's agent in this state appointed pursuant to sec. 22, ch. 56 of 1870, and on whom process was served in said action of Drake against this petitioner, was not an attorney at law; that he employed Finches, Lynde & Miller, attorneys at law, to defend the action, and that on the 27th of March, 1875, he signed the petitioner's name to a petition and bond to remove said action from the state to the federal court; but that his act in that regard was not authorized, and was never sanctioned or approved by the petitioner, and was wholly without its knowledge, and was not its act, but was wholly nugatory and void. 3. That the above-facts had not been made to appear in the proceedings upon Drake's application for the *mandamus* granted by this court. 4. That the petitioner had more than one hundred and eighty local agents in this state engaged in taking risks upon property therein; that the risks taken by the petitioner in this state for the year 1875 amounted to $9,253,858; that the revocation of its license had caused great apprehension among its policyholders as to the validity of their policies; that the establishment of the petitioner's business had been attended with much expense

and trouble, which would be largely lost if it were now forced to cease business in this state; and that the revocation of its license had already caused much loss, damage and inconvenience both to it and to the people of the state accustomed to do business with it.

Attached to the petition are affidavits of Hiram H. Lamport and Benjamin C. Townsend, both of the city of New York, and Abram Williams, of Chicago.* Mr. Lamport's affidavit states that George T. Hope is the president, the affiant the vice-president, and Cyrus Peck the secretary, of said insurance company; that Benjamin C. Townsend is its secretary in charge of its agency department, Abram M. Kirby its secretary in charge of the local department, and Charles H. Dutcher its secretary in charge of the Brooklyn department; that the company "has no other officers under its charter;" and that its affairs are regulated by its officers, who are elected and appointed by the board of directors. It is further stated that, Mr. Hope being temporarily absent from the city of New York, the affiant was the principal officer of the company in the city when such affidavit was made; that he had communicated by letter with Mr. Hope, and verbally with all the other officers, concerning the matters to which the affidavit relates, and makes the statement contained in the affidavit in behalf of himself, and "can say positively that it is true." The affidavit is long and minute, but its essential statements are these: "None of the officers of the *Continental Insurance Company* had any accurate knowledge of the proceedings in the matter above entitled, or in the suit in

---

* The affidavits of Mr. Lamport and Mr. Townsend are entitled in the case of *State ex rel. Drake v. Doyle* (*supra*, p. 175), and the *jurat* in each of them is dated September 1, 1875; and it appears to have been the intention of the affiants to have such affidavits used in connection with the return of the secretary of state to the peremptory writ of *mandamus* in that case. That writ was by the order of the court made returnable on the 5th of September; but was in fact returned on the 24th of August.

the circuit court for Winnebago county, or the suit in the United States circuit court for the western district of Wisconsin, which are referred to in and connected with this proceeding, until yesterday, when our counsel in New York for the first time received copies of the papers herein, which showed what proceedings had been taken on the relation of Mr. Drake to have the license of the company revoked by the state officers of Wisconsin, and also showed what return was made by the secretary of state of Wisconsin in those proceedings. None of the officers of the company had any knowledge whatever that any proceeding had been taken, or was intended, to remove the suit commenced by Mr. Drake in the circuit court of Winnebago county to the United States circuit court for the eastern district of Wisconsin; or that any bill had been filed in behalf of the company in the United States circuit court for the western district of Wisconsin, or elsewhere, or that it was intended to file such bill, for the purpose of restraining the secretary of the state of Wisconsin, or for any other purpose, until long after those proceedings were taken. None of the officers of the company knew that the said A. J. Drake had petitioned for a *mandamus* in this proceeding, or was intending to do so, until long after his petition was filed. None of the officers of the company knew, until after it was made, that a return had been made, purporting to be in behalf of said company, to the alternative writ of *mandamus* issued herein; nor did any of them know the contents of such return until yesterday; nor did any of them know until this day, when I was so advised by the company's counsel in New York, that the facts which I am about to state should have been stated in the form of a return to said alternative writ. The only information that the company or its officers in New York have received of the proceedings in the matter above entitled, have been by letter, and have been but recently received; and the officers of the company have supposed, until this day, that they would have opportunity,

State ex rel. Continental Insurance Company vs. Doyle, Secretary of State.

should it become necessary, to state all the facts relevant to the matter, and to have a hearing thereupon, before any decision would be made; nor have they been aware, until after the return was filed and argument had upon the demurrer thereto, how far this proceeding had progressed.

" On the 21st day of August, 1876, I received notice from the secretary of state of Wisconsin, that the license of the company to do business in Wisconsin had been revoked. This action was a surprise to me, as well as to all the other officers of the company. I have since examined the correspondence and records of the company in New York, to ascertain how far we had received notice of any of the proceedings above mentioned, or what communications we had received from which we ought to have derived notice; and, so far as I can ascertain, the following are the facts, and I believe they are all the facts that exist. After the fire under which A. J. Drake asserted a claim for loss against this company, a notice was received at the New York office stating that such claim was made. The communication was thereupon referred to J. B. Bennett, who was the agent of the company at Chicago in charge of its western agencies, and he was requested to attend to the same. The next information received at the New York office was from its adjuster, Mr. Hillyer, at Waupun, Wisconsin, who stated that he had examined the claim and had been unable to agree with the claimant, and that a suit had been commenced by Mr. Drake as claimant.

The next information that came to any of the officers of the company was by the receipt of a draft drawn upon the company by said Hillyer, its adjuster, which the company accepted, and which was paid. The officers of the company inferred from said draft that the said claim had been finally settled, and wrote to ascertain if such was the fact, and to ask for a copy of the order discontinuing the suit of Drake. Thereupon the company was informed that the suit had been settled and the company's officers supposed that that was an end

of the matter, and that what had been brought to their knowledge, as above stated, embraced substantially all the transactions between the company and Mr. Drake. The next that the officers of the company heard of the matter was, that Mr. Drake had obtained the alternative writ of *mandamus* above referred to, and that the matter was receiving proper attention. Since then, the officers of the company have received no definite intelligence in reference to the matter, until after the argument of the demurrer to the return made to said writ, and have supposed, so far as their attention has been called to the matter, or they have given it any thought, that they would be notified in proper time, and called upon to state the facts within their knowledge, and allowed opportunity to be heard, should that be thought important.

"I have learned, since I received the notice that the company's license was revoked, as mentioned above, that after Mr. Drake commenced his suit in the circuit court for Winnebago county, the proceedings which were taken to remove that suit to the circuit court of the United States for the eastern district of Wisconsin, were advised by Mr. Bennett, at that time the company's superintendent of agencies; and that the bill filed in the United States circuit court for the western district of Wisconsin for the purpose of obtaining an injunction and for other relief, and the proceedings taken thereunder, were directed either by Mr. Hillyer, or by Mr. Bennett, the beforementioned company's agent at Chicago.

"I have also found that Mr. Bennett, after the proceeding was taken to remove Drake's suit to the United States court, wrote a letter to the company at New York, stating that that proceeding had been taken. That letter, however, never came to the knowledge of any officer of the company. The correspondence of the company received at New York is very large, and, as it comes in each morning, is distributed among the various clerks, so that each may attend to that part which belongs to his department. The envelopes from our different

agencies generally indicate on the outside the nature of the communication. The clerks to whom the correspondence is distributed, open the same; and it is their duty to refer all matters of importance to one of the officers of the company, and to attend themselves to the ordinary matters of routine. The letter above referred to was, as it now appears, handed to the loss clerk in the company's New York office, and he, supposing that the course which had been advised by the counsel retained by the company's agents in the west would be unobjectionable, did not bring the letter to the notice of any of the company's officers.

" I do not intend to say that none of the company's officers ever knew until after the license to do business in Wisconsin was revoked, that proceedings had been taken to remove Drake's case to the United States court, or that a bill had been filed in another branch of the United States court to obtain an injunction; but I do mean to say that none of the company's officers knew that either of these proceedings had been taken until long after they were taken, and it was too late to recall them; and that none of them knew until since the license was revoked, by what authority those proceedings had been taken; and I mean to say that the knowledge of the company's officers was indefinite, and was to the effect that proceedings, unauthorized by themselves, had been taken, and that they would at the proper time have full opportunity to put themselves right upon the record, and that meantime all was being done that could properly be done to rectify mistakes.

"I do not intend to assert, as a matter of law, that none of the agents of the company who have directed the proceedings that I have referred to above, had any authority in the premises. That is a question I respectfully submit to the court for decision. I do mean to say that none of the officers of the company ever directed, or in any way authorized, any of the agents above mentioned to take proceedings to remove the

suit brought by Drake into the United States court, or the proceeding which was taken in the United States court to obtain an injunction; or employed counsel for that purpose; or knew what counsel were employed or attending to the same, until long after they had been engaged by the agents in the west.

"And I further state that no contract or communication between the company or its officers and the said agents, in terms authorized the latter to take any such proceedings. If they had any such authority, it must be because the law implied it.

"My understanding of the matter is, that none have authority to exercise any corporate powers of the company, save its officers, under advice of its board of directors; and that whatever authority its officers may be able to delegate, must be expressly delegated.

"I must state, however, that our adjusters and general agents are usually allowed to exercise a wide discretion, and that the business of the company is so extended, and is of such a nature, and its agents are so carefully selected, that the company does not, except in extreme cases, interfere with the exercise of that discretion; and from what I have already learned in reference to this case, and have stated, I have no doubt that our agents in the west supposed they were acting within the limits of their authority.

"My own opinion, and that of the other officers of the company, is, that the agents were mistaken; and in fact were assuming to exercise an authority that was not conferred upon them.

"I can say, and do say positively, that had the fact been brought to the notice of any of the company's officers, that it was proposed to remove the suit brought by Drake into the United States court, they would have disapproved and forbidden such action, and would have directed that the claim should be paid, or should be contested in the state court where Mr. Drake had brought his suit. For myself, and on behalf of all

the officers of the company, I positively disclaim any intention on behalf of the company to violate the terms of the agreement with reference to which the state of Wisconsin licensed it to conduct business within that state, or to violate any law of the state of Wisconsin while exercising privileges under its laws.

"I further state, for myself and in behalf of all the officers of said company, that so far as it is possible to restore Mr. Drake to the position he was in before the proceeding was taken to remove the suit to the United States court, the company is prepared to place him in that position; and if he now desires to return to the company or pay into court the sum that he has received on effecting a settlement of his claim, and to continue his suit in the circuit court for Winnebago county, or in any other court of the state of Wisconsin, the company will accede to such a proposition, and will enter its appearance in any such court.

"In making the above statement, wherever I have spoken for the officers of the company, I have intended to speak for the company, but have avoided using the word 'company' in some instances, merely that I might not be deemed to have asserted that the acts of the agents were not the acts of the company, in case the court held as matter of law that the company was bound by such acts."

Mr. Townsend's affidavit is confirmatory of Mr. Lamport's. That of Mr. Williams states that he has been, since August, 1874, the superintendent of the western department of said petitioning company; that as such he has had the general control and direction of the company's business in that department, which includes this state, and has had authority to decide all questions arising in said department in the usual and ordinary course of business; but that it is his duty, under his appointment and instructions, to submit all new and unusual questions which arise in the conduct of the business of the company, and all questions of extraordinary difficulty or

importance, to the principal office of said company, which is located in the city of New York, for special instructions; and that it has been affiant's practice invariably so to do; that he never directed, sanctioned or approved of the removal of the action of Drake against the petitioner from the state court in which it was brought, to the United States court; that he had no knowledge or information of such removal until long after the action had been settled and discontinued, when he was notified by the secretary of state of this state of the application made to the latter for a revocation of the petitioner's license; that when affiant then learned for the first time of the removal of said cause, he disapproved of the same, and has never sanctioned, ratified or confirmed such removal; that, as affiant is informed and believes, said action was so removed wholly by the local agents and attorneys of said company in the state of Wisconsin, without the sanction or approval, and without the knowledge, of said company, or the board of directors thereof, or any officer or committee of said company having any authority to act for the company in the premises; that such act of removal was wholly outside of the scope of the employment and of the duties and business which the local agents and attorneys of said company in this state were authorized to perform, and outside of the usual business and duties which they did in fact transact and perform. The affidavit then states that on the 14th of July, 1875, affiant received information that their local agent in this state, and the attorneys by him employed, had removed, or were about to remove, from a circuit court of this state to the federal court, an action brought by one Wright against the petitioner for loss sustained on a policy insuring property in this state; and that said affiant immediately, by telegraph and letter, directed the cause to be withdrawn from the federal court, and the claim of said Wright was thereupon at once paid in full and the cause discontinued. With this exception, the affiant states, no action brought in this state upon a policy of insurance of

his company, other than that upon the Drake policy, has ever been removed from a state court to a United States court, since the enactment of a law forbidding such removal.

*Wm. P. Lynde,* for the relator.   [No brief on file.]

RYAN, C. J.   In granting a peremptory *mandamus* to the secretary of state to revoke the license of the relator in this case (*State ex rel. Drake v. Doyle, ante,* 175), we spoke with just severity of the utter *mala fides* of a foreign insurance company coming here under a voluntary and advantageous license of the state, upon condition not to harass citizens of the state dealing with it, by removing actions on its policies from the state court of the vicinage to distant and expensive federal courts.   The papers submitted to us in support of the present application go far to satisfy us that the removal of the action by the present relator, for which we granted the writ to revoke its license, was without the knowledge or sanction of its principal officers in New York.   The affidavit of Mr. Lamport, vice-president of the company, appears to be very frank and manly, and to exonerate the New York officers of the company from all personal responsibility for the removal, or for the scandalous breach of faith involved in it. We cannot but regard the petition of the relator, repudiating the removal, as a *bona fide* submission to the authority of the state, and to the condition imposed upon the relator's license to do business in it.

The supremacy of the state law over state officers, and over foreign corporations licensed under it, has been sufficiently vindicated, and foreign corporations sufficiently warned of the danger of playing fast and loose with their faith to the state. And we heard the present application with a strong desire of relieving the relator from further loss by the revocation of its license.   We regret that we are able to see no way of doing so, consistent with our duty.

I. This application was put upon the ground that the re-

moval of the action from the state to the federal court was caused by the attorney of the insurance company, appointed under sec. 22 of ch. 56 of 1870, without the knowledge and against the wishes of all the chief officers of the company in New York; that his action in the premises was outside of his authority, and did not bind the corporation. To this position there are two sufficient answers:

*First.* The petition to remove the cause was the petition of the corporation, running in its name, and presented to the state court on its behalf, by the attorneys appearing for it of record. The court in which it was presented could not disregard it for any latent want of authority of the officer verifying it. It was effectual to remove the cause, and the cause was in fact removed under it. Sec. 1, ch. 64 of 1872, makes it the imperative duty of the secretary of state to revoke the license of a foreign insurance company which shall make such application to remove an action. And the duty of the secretary to do so rests, not upon the authority or abuse of authority of the officer of the corporation causing the application to be made, but upon the actual application to remove the action.

And this was not only wise, but necessary. For an agent or officer of the corporation, not expressly authorized to do so, might well, as this case proves, make an effectual application to remove the cause, and remove it beyond recall, while the corporation might repudiate his act and claim its insufficiency to justify the revocation of its license. The actual removal is the evil at which the statute aims. And no foreign insurance company could be tolerated in suffering the removal of a cause *de facto* by its officer or agent, and in then claiming immunity *de jure* from revocation of its license, for the officer's or agent's want of authority. The authority which is adequate for the removal of a cause, is adequate to work a revocation of the license.

The local agents and attorneys of foreign insurance companies licensed here, have the actual power to remove causes

from state to federal courts. And it is not enough for the corporation to be silent, not to instruct their local representatives to remove causes. They owe it as a duty to the state to instruct them not to remove causes. If they choose to run that risk, at the discretion of their local agents or attorneys, they *ipso facto* run corresponding risk of revocation of their licenses. It will not do that they stand indifferent between their duty to the state and the discretion of their local agents. It will not do, in complying with their obligations to the state, that their principal officers, a thousand miles away, with little knowledge or control of litigation here, act *bona fide;* they must see to it that their local representatives, with all practical control of litigation here, are prohibited from acting *mala fide.*

*Second.* The statute requires that foreign insurance companies taking license here, "shall first appoint an attorney in this state, on whom process of law can be served;" "and any process issued, etc., in this state, and served upon such attorney, etc., shall be deemed a sufficient service of process upon such company." It was the attorney so appointed by the relator who made application for the corporation to remove and removed the action, for which the relator's license was revoked.

As between the insurance company and the state, it appears to us quite manifest that, as to all process of state courts served upon him, the attorney in fact so appointed stands here, for the purposes of his appointment, for the corporation, and possessed of all its power in the disposition of process against it, served upon him. He may have general or special instructions from the corporation, what course to take in each action or in all actions. The state is not privy to these, and has no concern with them. The state requires the appointment of an attorney in fact, in whom the corporation can confide, in place of the corporation itself, for the purposes of actions against it. It may be presumed that the attorney will

act for the interest and according to the instruction of the corporation. But as between him and the state, as between him and suitors here against the corporation, he possesses the power of the corporation over the process served upon him; the same power that he has over process against himself personally. He represents, *pro hac vice*, the corporation with all its power in the premises. And his disposition of the process served upon him, his control of the action instituted by the process, is the disposition, the control, of the corporation itself. The ideal being of the corporation can act only through its servants; and as between it and the state, its statutory attorney is its sole servant in the premises, vested with its whole power. As between the corporation and the state, he is, *quoad hoc*, the corporation itself.

This is no new principle in this court. It is the same on which the judgments in *Bass v. Railway Co.*, 36 Wis., 450, and *Craker v. Railway Co.*, id., 657, went; and is indeed the same on which *Railroad Co. v. Finney*, 10 Wis., 388, and other cases in this court, and *Weed v. Railway Co.*, 17 N. Y., 362, and other cases elsewhere, really rest. In *Bass v. Railway Co.*, it is said of officers of railroad trains: "We feel warranted by principle and authority to hold that, in the enforcement of order on the train, and in the execution of reasonable regulations for the safety and comfort of the passengers, and for the security of the train, the authority of these officers, exercised upon the responsibility of the corporations, must be obeyed by passengers; and that forcible resistance cannot be tolerated. They act on the peril of the corporations, and their own. Indeed, as that fictitious entity, the corporation, can act only through natural persons, its officers and servants, and as it of necessity commits its trains absolutely to the charge of officers of its own appointment, and passengers of necessity commit to them their safety and comfort *in transitu*, under conditions of such peril and subordination, we are disposed to hold that the whole power and authority of the corporation,

*pro hac vice*, is vested in these officers; and that, as to passengers on board, they are to be considered as the corporation itself; and that the consequent authority and responsibility are not generally to be straitened or impaired by any arrangement between the corporation and the officers; the corporation being responsible for the acts of the officers in the conduct and government of the train." This is repeated and enforced in *Craker v. Railway Co.*, where it is said that, in respect of local duties of a corporation, it is not represented by directors in a foreign board room, or by officers in distant offices, but by the very servant or agent appointed in respect of such duties, with power to fulfill them. And it is the settled law of this court, that where a corporation appoints an agent with power and control over a function or duty of the corporation, the agent is so far the representative of the corporation; his action is the action of the corporation, for which the corporation is responsible, however faithless to his duty the agent may be. Acting within the scope of his agency, he binds the corporation, though he acts in disobedience of orders or betrays the trust reposed in him by his superiors. In this case, the disposition by the agent of the process served upon him, was, as to the state, the disposition of the corporation; though, as between him and the corporation, he may have acted without the sanction and against the wishes of his superior officers.

In either view, the relator cannot be held irresponsible for the removal of the cause. It must be held for the act of its subordinate agent, within the scope of his authority, even when unsanctioned and disapproved by its board of directors and other principal officers.

II. It was urged that the relator was not a party to the proceeding in which the *mandamus* was issued to revoke its license; and is therefore not bound by it.

This is only a new way of putting the objection urged against the *mandamus* itself, that the license could not be revoked without notice. We held there that the license could

be revoked *ex parte*, by the very terms on which it was granted; that the relator ran the risk of summary revocation *ex parte*, and could not object to the summary revocation, subject to which it accepted the voluntary license of the state. Upon condition broken, it was the peremptory duty of the secretary of state to have revoked the license, without notice. And the *mandamus* only enforced the secretary's duty of summarily revoking the relator's license, without notice to it. Having no right to notice of the revocation, it is difficult to see how the relator was entitled to be a party to the *mandamus* enforcing the revocation, and indeed how it could be a party. The court, without notice, commanded the secretary merely to do what it was his duty to have done, without notice.

We lay no stress upon the fact that the relator's own counsel was heard for the secretary in opposition to the *mandamus*. But it is obvious from what has been said, that, could it have been, and had it been, a party to the *mandamus* proceeding, nothing which it now sets up would have availed it against the peremptory writ.

III. Under the circumstances disclosed by this application, we are very reluctant to hold the relator to the strict consequences of its own act. But, having on full consideration issued a *mandamus* to the secretary to perform his statutory duty, it would be a strange anomaly to give way now to appeals to a supposed equitable discretion, and to send out another writ to that officer to undo the duty which he has already done by command of the court.

That is quite clearly out of the question. And we therefore considered the effect of opening the judgment for the *mandamus*, still within our control; and of permitting a further return to the alternative writ, setting up the facts now presented by way of appeal to our discretion. But brief reflection disclosed the inutility of that course.

It is true that courts have discretion in issuing writs of

*mandamus* merely in aid of private right. But when the writ is invoked on behalf of the state, as a pure prerogative writ, in matters *publici juris*, there is no discretion. The writ goes *ex debito justitiæ*, without discretion. Tapping, 287; 35 Wis., 594. And it would be worse than idle to open a judgment which we still approve, to consider matters which could not affect it. Submitting to the state law and to its interpretation by the state court, in default only by an act of its local agent, disavowed by its principal officers, the relator has a strong claim to the mercy of the state. But it is not for us, in such a case, to make justice give way to mercy. That discretion rests only in the legislature, to whose lenient consideration we commend the relator.

*By the Court.* — The motion for an alternative writ is denied, with costs against the relator.