COLUMBIA YACHT CLUB, Plaintiff, *v.* ROBERT MOSES, as Commissioner of Parks of the City of New York, and Another, Defendants.[*]

Supreme Court, New York County, May 1, 1934.

*Charles G. Smith,* for the plaintiff, for the motion.

*Paul Windels,* Corporation Counsel [*William C. Chanler* and *Oren C. Herwitz* of counsel], for the defendants, opposed.

LEVY, J. This action is brought to restrain the park commissioner of the city of New York and also the city from interfering with the plaintiff's occupancy of certain premises in Riverside Park near Eighty-sixth street, until after December 31, 1934. A temporary injunction is sought to restrain the defendants from ousting the plaintiff during the pendency of the action. The plaintiff is a membership corporation which maintains a yacht club for the benefit of its members at or near the foot of West Eighty-sixth street on the North river west of the New York Central railroad tracks. It has occupied the grounds, including subsequent additions obtained by filling in land under water, since 1888. The property consists of an area running about 240 feet north and south, and 140 feet east and west, exclusive of the dock and landing floats which extend into the river. Upon these grounds it has erected a clubhouse and a pavilion at its own expense and beautified and improved them with lawns, hedges, flowers and concrete walks.

[*] See *Magee* v. *Moses,* 151 Misc. 816.

At the time of the original occupancy the waterfront at Eighty-sixth street was under the jurisdiction of the dock department from which annual permits were obtained by the plaintiff for a consideration of $150 per year. In 1894 Riverside Park was extended so as to include the portion lying west of the tracks, and jurisdiction was thus transferred to the park department. The plaintiff thereafter occupied the premises pursuant to annual license or permit from that department, paying an annual fee of $300. The last written renewal permit was for 1933. Like others before it, it was "revocable at any time." In January, 1934, a check in the sum of $150 was tendered to the department of parks with a memorandum on its face that it was for "rent 6 mos. 1/1/34 to 6/30/34." This check was deposited and cashed by the payee on February 24, 1934.

On March 20, 1934, the park department informed the plaintiff that it was hampered in its development work in the neighborhood of Eighty-sixth street by plaintiff's building and boats, and invited a representative for a conference, to "arrange to move these boats as quickly as possible and eventually to vacate the Club House." On April 5, 1934, the commodore of the club had such a conference with the representative of the park department, at which the latter proposed that plaintiff grant to the city a deed to its clubhouse, docks and floats, in consideration of which the club would be permitted to continue until October 1, 1934, with the existing landing facilities for boats to be maintained by the department until such time after that date as facilities could be provided at the public docks at Seventy-ninth or Ninety-sixth streets. In reply to this proposal plaintiff's board of trustees sent a communication, dated April 14, 1934, in which they requested further time for consideration by reason of the fact that on so vital a matter the members should be convened and consulted. On April eighteenth plaintiff received a notice from the commissioner of parks, dated April seventeenth, and reading as follows:

"This is to notify you that you are occupying property belonging to the City of New York under the supervision of the Department of Parks without a permit.

"This property is needed immediately for construction work. Please vacate the property and remove all personal property belonging to you from the premises by May 1, 1934. If your property is not removed by that date it will be treated as abandoned property.

"Very truly yours,

"(Sgd) ROBERT MOSES,

"*Commissioner.*"

Plaintiff replied by denying the commissioner's right to oust the club in such peremptory manner and instituted this action.

The fundamental legal position that the plaintiff at best occupies the premises as a mere licensee is unassailable. The commissioner, in his last letter, however, has gone further and apparently treated the club as a trespasser. The acceptance of the check for $150 can lead to no other inference than that plaintiff was continuing in 1934 under a *revocable* permit. The very authority under which the premises were occupied in 1933 and previous years, indicates that it was revocable *at any time.* And even if it were non-revocable in terms, it would still be subject to the paramount right of the city to take the property for more important public uses. While the commissioner was in error in asserting that the club was occupying the premises without a permit, he is correct in his stand that its rights, if any, must yield to the more important public interest involved in the comprehensive development of Riverside Park, in connection with the covering of the railroad tracks and the extension of the West Side highway.

In *Williams* v. *Hylan* (126 Misc. 807, 808, 809) I took occasion to say: " The statute defining the duties of the commissioner seemingly recognizes that the proper use of the park results from its aesthetic features and from the recreational facilities it provides for the promotion of the health and enjoyment of the citizens. * * * ' Monuments and buildings of architectural pretension which attract the eye and divert the mind of the visitor; floral and horticultural displays, zoological gardens, playing grounds, and even restaurants and rest houses and many other common incidents of a pleasure ground contribute to the use and enjoyment of the park.' Buildings which may be of architectural pretensions, but which are utilitarian beyond the scope of park purposes, will, therefore, not be permitted. The erection and maintenance of the structures within the park, no matter how ornamental, could be justified only on the ground that they actually serve park purposes. The proposed buildings cannot be justified on the mere ground that they are artistic."

It may be that while the park frontage in the vicinity of the club was allowed to remain undeveloped, the beautification of the grounds, the quasi-public uses of the docks, and the non-interference of the property with general public purposes, justified the grant of annual permits, for the reason that, relatively, the grounds were used for park purposes best available at the time. But no one can seriously doubt that such use must give way to the comprehensive development of Riverside Park, now being undertaken by the city for the benefit of the public at large.

What effect have these observations upon the validity of the summary notice of the park commissioner? Plaintiff's counsel, in his oral argument, remarked that the commissioner had acted with "brutal severity." A mere twelve days' notice of removal to even an ordinary squatter might not be deemed ample. Necessarily, it would depend on the attendant circumstances. But the feelings of plaintiff may easily be appreciated when it is considered that after nearly fifty years' occupation and accumulation of property, it was abruptly ordered to remove its belongings within a few days, under penalty of being assumed to have abandoned them. The situation, it seems to me, becomes aggravated by the fact that the precipitate notice gives the appearance of having been prompted by the commissioner's pique at plaintiff's refusal to accept terms which to him seemed generous and which would have permitted the club to remain until *October 31, 1934.* The commissioner now retorts that since April 5, 1934, he has changed his plans. Furthermore, since that time legislation has been passed to enable the railroad to continue the work of covering its tracks. But the latter event occurred after the commissioner had already sent his summary notice; so that from the conduct of the negotiations it does not appear that the Riverside Park improvement was of such vital moment that the occupation by the club until October 31, 1934, would have seriously impeded the proposed plans.

Plaintiff was entitled to reasonable notice to vacate. As was said in *Watson* v. *Empire Eng. Corp.* (77 Misc. 543) by Mr. Justice POUND (now Chief Judge of the Court of Appeals), in referring to the owner of a sawmill on State lands: "His mill was allowed to remain, unmolested by the state, for so many years that it is presumed that the state acquiesced therein. He thus is to be regarded as a licensee rather than as a trespasser. As such, his rights could be terminated without compensation only by giving him a reasonable notice to withdraw and remove his property from the premises." I shall not presume to say what would be a reasonable time under the circumstances. But I will say that notice effective as of May first is unreasonable. To the extent to which plaintiff seeks an injunction *pendente lite,* the relief must be assured, but on condition that the trial, after the joinder of issue, be set for a very early date. In this manner the reasonableness of time within which plaintiff shall be required to remove and reclaim its property, consistent with the imperative plans of the city, might be suitably and speedily determined.

In concluding this memorandum, I must observe that a burning zeal for the public interest should not dazzle an official — no matter how well intentioned — so as to blind him to individual amenities.

Even where the public authority is entirely correct in his legal position, he should maintain it without inflicting undue hardship or injury. Tyranny, whether it consists of oppressive measures or " brutal severity," is never necessary. Ordinarily public situations may well be left to the sound judgment of the administrative authority. But if the discretion is abused, it is the duty of the courts to grant redress. Actions by public servants, " arbitrary, tyrannical and unreasonable," have often received the attention of the courts. (See *People ex rel. Lodes* v. *Department of Health*, 189 N. Y. 187, .194.) Here, without question, twelve days' notice to remove structures, docks, personal property, etc., accumulated in the course of almost half a century, was not necessary for the proper protection of the public interest.

The motion is granted. Settle order on two hours' notice, which shall provide for an undertaking in the sum of $2,500.