(113 App. Div. 377)

METROPOLITAN MILK & CREAM CO. v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. May 11, 1906.)

1. LICENSES—BOARD OF HEALTH—PERMITS TO SELL MILK—REVOCATION.

　　Under Consolidation Act, Laws 1882, p. 159, c. 410, § 576, as amended, and New York City Charter, Laws 1901, p. 497, c. 466, § 1169, requiring the board of health to enforce its sanitary code and the laws relating to health and to avert peril to health, a license to sell milk, issued pursuant to the sanitary code prohibiting the sale of milk without a permit, continued in force by section 575 of the consolidation act (page 158) and section 1172, c. 466, p. 499, Laws 1901, as amended by Laws 1904, p. 1491, c. 628, § 3, may be revoked by the board on it finding after hearing that the licensee sold adulterated milk, especially where the license stipulated that it was revocable at the pleasure of the board.

Appeal from Special Term, New York County.

Action by the Metropolitan Milk & Cream Company against the city of New York and another. From an interlocutory judgment overruling a demurrer to a separate defense in the answer, plaintiff appeals. Affirmed.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

John J. Lenehan, for appellant.

Theodore Connoly, for respondents.

INGRAHAM, J. The action was brought to recover $30,000 damages sustained by the plaintiff by the revocation by the board of health of the city of New York of certain permits issued by the said board under which the plaintiff was authorized to sell fresh and condensed milk in the city of New York. The plaintiff was a domestic corporation and engaged in selling milk and cream in the city of New York. The complaint alleges: That the department of health is a department of the city of New York, organized under the charter of the city of New York (chapter 466, p. 1, of the Laws of 1901). That prior to January 1, 1897, the board of health of the former city of New York issued to the plaintiff seven permits or licenses to sell milk in the city of New York, dated May 10, 1896. That thereafter the present board of health organized under the charter of 1901 issued to the plaintiff three additional permits to sell milk in the city of New York, dated May 7, 1902, and June 10, 1903. That the sale of milk by the plaintiff in the city of New York without a permit from the board of health was after the 14th of December, 1904, a misdemeanor. That on the 14th day of December, 1904, the board of health adopted a resolution wherein and whereby they directed all said 10 permits or licenses to sell milk theretofore issued to the plaintiff and under which the plaintiff was carrying on its said business to be forthwith annulled and revoked. That the action of the board was unjust, arbitrary, unlawful, and illegal, and without just cause, and that the said board was without any power, authority, or warrant in law to revoke said licenses. The form of the permits were set forth in the complaint as follows:

"Metropolitan Milk & Cream Company is hereby authorized to sell milk, fresh and condensed, at borough of Manhattan, under the laws, rules, and regulations of the board of health, of the department of health of the city of New York. This permit is not transferable to any person or location other than above, and must be kept posted at all times in a conspicuous place in the store, and is revocable at the pleasure of the board."

That the plaintiff's good will, trade, and business were at the time of said revocation of the value of $30,000. That in consequence of said revocation of the said licenses or permits the plaintiff was prevented from continuing or carrying on its said business, and said business thereby and thereupon was forthwith wholly and instantly terminated and entirely destroyed, all to the plaintiff's damage in the sum of $30,000. The defendants served separate answers, which set up as a separate defense that by virtue of the laws of the state of New York and the Sanitary Code of the city of New York the defendant, the department of health of the city of New York, had authority and power

to prevent the plaintiff from bringing into the city of New York, or keeping or selling therein, unwholesome or adulterated milk, or milk which had been watered, or milk which had been in any respect adulterated, reduced, or changed by the addition of water or any other substance; that prior to the 14th day of December, 1904, the department of health of the city of New York, upon investigation and inquiry, discovered that the plaintiff was operating a creamery in the county of Orange, in the state of New York, which creamery and appurtenances were kept and maintained by the plaintiff in a filthy, unwholesome, and unsanitary condition, and from the said creamery the plaintiff was shipping and sending to the city of New York, to be sold to its citizens, milk which had been watered, and which had been adulterated and changed by different substances; and that the plaintiff had been using in such milk preservatives, so called, and coloring matter, and was also shipping and sending to New York, to be used by its citizens skim milk mixed with water, labelled "Butter Milk"; whereupon the department of health of the city of New York, after notice to the plaintiff and after a hearing upon all the facts, revoked the license or licenses of the plaintiff to sell milk in the city of New York, as it had a right to do, and as it was its duty to do, and not otherwise. To these separate defenses demurrers were interposed by the plaintiff, which were overruled.

The learned counsel for the defendants do not attack the sufficiency of the complaint, although it is somewhat difficult to see how any act of the board of health, acting under an authority conferred by the state to regulate the sale of impure and unwholesome milk in the city of New York, can impose an obligation upon the municipality. As this point, however, is not taken by the defendant, it will not be considered. The first seven permits were issued on March 10, 1896, under the consolidation act. Chapter 410, p. 1, Laws 1882, as amended. By section 34 (page 8) of that act the board of health was created a department of the said city. Section 575 (page 158) provides that the Sanitary Code "adopted and declared as such at a meeting of the board of health of the health department of the city of New York, held in the city, on the second day of June, 1873, as amended in accordance with law, is hereby declared to be binding and in force in said city." Section 576 (page 159) provides that the board of health "shall cause to be enforced the provisions of its Sanitary Code." In People ex rel. Lieberman v. Vandecarr, 175 N. Y. 440, 67 N. E. 913, it was held that section 66 of the Sanitary Code which reads, "No milk shall be received, held, kept, offered for sale or delivered in the city of New York without a permit in writing from the board of health and subject to the conditions thereof" was valid; that it was lawful for the health authorities in the city of New York to require the relator to obtain a permit under section 66 of the Sanitary Code in order to receive, hold, offer for sale and deliver milk, and failing so to do to arrest and punish him; that the vesting of powers more or less arbitrary in various officials and boards is necessary if the work of prevention and regulation is to ward off fevers, pestilence, and the many other ills that constantly menace great centres of population. The board of health thus having power to issue permits authorizing a person to carry the business of dealing in milk

in the city of New York, this power was continued by the subsequent charters of the city of New York. By the present charter (chapter 466, p. 499, of the Laws of 1901) the board of health is constituted. Section 1172 of the charter, as amended by chapter 628, p. 1491, § 3, of the Laws of 1904, provides that:

"The Sanitary Code which shall be in force in the city of New York on the first day of January, nineteen hundred and seventy-two, and all existing provisions of law fixing penalties for violations of said Code are hereby declared to be binding and in force in the city of New York, and shall continue to be so binding and in force, except as the same may, from time to time, be revised, altered, amended or annulled, as herein provided."

By section 1169 it was made the duty of the board to "enforce all laws of this state applicable in said district, to the preservation of human life, or to the care, promotion or protection of health; and said board may exercise the authority given by said laws to enable it to discharge the duty hereby imposed; and this section is intended to include all laws relative to cleanliness, and to use or sale of poisonous, unwholesome, deleterious, or adulterated drugs, medicine or food. * * * The board of health shall use all reasonable means for ascertaining the existence and cause of disease or peril to life or health, and for averting the same, throughout the city." The board, being charged with the duty of protecting the health of the inhabitants and preventing the sale of impure or adulterated food, ascertained that the plaintiff, acting under the permits which it had issued, was engaged in selling impure and adulterated milk. The board gave to the plaintiff notice of these charges, and after a hearing it revoked the permits; and to sustain the contention of the plaintiff we must hold that such permit thereby becomes irrevocable and authorizes the person to whom it was granted to continue forever to sell milk, although the conditions under which the permit was issued were continually violated, the provisions of the Sanitary Code in relation to milk sold disregarded, and that a person acting under a permit from the board of health is selling to the inhabitants of the city of New York poisonous and impure article for food, endangering the public health. The sole authority that the health board would have, if this contention was correct, would be to prosecute the person selling the poisonous article in the shape of milk, fine it, and in the meantime such person could go on poisoning the people under a permit or license from the health authorities, a proposition which is so unreasonable that a mere statement is sufficient to refute it. There is nothing in either the Penal Code or the charter that makes such a permit irrevocable. The permit itself provides that it is revocable at the pleasure of the board. and the plaintiff accepted it with that condition. There is nothing unreasonable in this condition; and, irrespective of the general power of the board of health to revoke a permit which is being abused and under which the person accepting it and using it is persistently violating the law, it is certainly not an unreasonable condition to insert into such a permit a provision that it is revocable by the board that issues it. To hold that a permit once granted is irrevocable would be to totally defeat the object of the statute in requiring such a permit before a person should engage in the business of supplying to the inhabitants of a city food.

We think it entirely clear that the court below was justified in overruling the demurrer, and the judgment appealed from is affirmed, with costs, with leave to the plaintiff to withdraw the demurrer within 20 days on payment of costs in this court and in the court below. All concur.

