The order of the Appellate Division appealed from should be affirmed, with costs.

Cullen, Ch. J., O'Brien, Haight, Vann, Hiscock and Chase, JJ., concur.

Order affirmed.

----

The People of the State of New York ex rel. George Lodes, Respondent, v. The Department of Health of the City of New York, Appellant.

1. New York City — Members of Board of Health Administrative, Not Judicial Officers — Revocation of Permit to Sell Milk Reviewable by Alternative Writ of Mandamus. Members of the board of health of the city of New York are administrative, not judicial officers. It was not intended by section 1173 of the charter (L. 1901, ch. 466), providing that their acts shall be "regarded as in their nature judicial," to make them judicial officers, but simply to create a presumption that their acts were legal. Permits to sell milk granted by them are not property in any legal or constitutional sense, but are mere revocable licenses; their revocation is an administrative, not a judicial act, may be effected without notice and an opportunity to be heard and is not reviewable by appeal or certiorari; if the revocation is arbitrary or unreasonable, the remedy of the licensee is not by a peremptory but by an alternative writ of mandamus.

*People ex rel. Lodes* v. *Dept. of Health*, 117 App. Div. 856, reversed.

(Argued May 24, 1907; decided October 1, 1907.)

Appeal from an order of the Appellate Division of the Supreme Court in the second judicial department, entered March 15, 1907, which affirmed an order of Special Term

granting a motion for a peremptory writ of madamus to compel the defendant to rescind its action in revoking permits issued to the relator to sell milk within the borough of Brooklyn.

The facts, so far as material, are stated in the opinion.

*William B. Ellison, Corporation Counsel (James D. Bell* and *Edward H. Wilson* of counsel), for appellant.   The relator, on the face of the papers, did not show himself entitled to a peremptory writ of mandamus, and the order appealed from is, therefore, erroneous.   (L. 1901, ch. 466, § 1173; *People ex rel. Lieberman* v. *Vandecarr,* 81 App. Div. 128; 175 N. Y. 440; 199 U. S. 552; *People* v. *Davis,* 78 App. Div. 570.)   The defendant acted within its clear legal rights and in the interest of the public health in revoking the milk permits granted to the relator without notice to him:   (*People ex rel. Savage* v. *Bd. of Health,* 33 Barb. 344; *Board of Health* v. *Heister,* 37 N. Y. 661; *People ex rel. Copcutt* v. *Bd. of Health,* 140 N. Y. 1; *Matter of Walker* v. *Maxwell,* 68 App. Div. 196; *People ex rel. Mayor, etc.,* v. *McCarthy,* 102 N. Y. 126; *People ex rel. Schau* v. *McWilliams,* 185 N. Y. 92; *Martin* v. *State,* 23 Neb. 371; *Child* v. *Bennis,* 17 R. I. 230; *Comm.* v. *Kinsley,* 133 Mass. 578; *Bd. of Police* v. *Barrie,* 34 N. Y. 657.)

*Albert R. Moore* for respondent.   The board of health had no power to revoke plaintiff's permits because no provision for revocation of the permits exists in the charter or the Sanitary Code or elsewhere; and fine, imprisonment and pecuniary penalties are the only punishments prescribed for violation of the Sanitary Code.   (Code Civ. Pro. § 941; *Boston* v. *Abraham,* 91 App. Div. 417; *Coonley* v. *City of Albany,* 132 N. Y. 145; *N. Y. A. Club* v. *Wurster,* 19 Misc. Rep. 443; *Wynehamer* v. *People,* 13 N. Y. 420; *Matter of Jacobs,* 98 N. Y. 105; *C. R. Co.* v. *Minnesota,* 134 U. S. 418; *Stuart* v. *Palmer,* 74 N. Y. 183; *Rockwell* v. *Nearing,* 35 N. Y. 302; *Matter of City of Brooklyn,* 87 Hun, 55; *Health Dept.*

v. *Rector*, 145 N. Y. 48.) The legislature has not power arbitrarily to deprive individuals of the right to engage in any of the lawful and ordinary businesses or occupations or authorize the same to be done by the board of health, or department of health, or any local authority. (*Hart* v. *Mayor, etc.*, 9 Wend. 571; *Athletic Club* v. *Wurster*, 19 Misc. Rep. 443; Dillon on Mun. Corp. § 280; *Bertholf* v. *O'Reilly*, 74 N. Y. 509; *Matter of Jacobs*, 98 N. Y. 98; *People* v. *Marx*, 99 N. Y. 377; *N. J. Nav. Co.* v. *Merchants' Bank*, 6 How. Pr. 382; *Barbier* v. *Conolly*, 113 U. S. 27; *Yick Wo* v. *Hopkins*, 118 U. S. 356; *Hawker* v. *New York*, 170 U. S. 189; *Plumley* v. *Massachusetts*, 155 U. S. 461; *Schollenberger* v. *Pennsylvania*, 171 U. S. 1; *Collins* v. *New Hampshire*, 171 U. S. 30; *Capital City Dairy Co.* v. *Ohio*, 183 U. S. 238; *Dobbins* v. *Los Angeles*, 195 U. S. 223; *People* v. *Gillson*, 109 N. Y. 389.)

Haight, J. On the 17th day of April, 1903, the board of health of the department of health of the city of New York issued to the relator, George Lodes, six permits to sell and deliver milk from wagons and from his store in the borough of Brooklyn, which permits were revoked by the board of health, without notice to him, on the 17th day of January, 1906. Thereupon the relator applied for a peremptory writ of mandamus to compel the board of health to rescind its action in revoking the permits, alleging that there was no public necessity for the revocation of the permits; that the action of the board was arbitrary and unreasonable, tyrannical and oppressive in the extreme, and beyond the power and authority conferred upon it by law. On the hearing of such application the board of health presented affidavits showing that the relator, his wife and the drivers of his wagons had been four times convicted of selling, or offering for sale, adulterated milk, and that their action in revoking his permits was based upon such repeated violations of the law, and that by reason thereof they deemed him an unfit person to traffic in milk. The Special Term granted the peremptory writ

prayed for, and the affirmance of that order by the Appellate Division is now brought up for review.

The Sanitary Code of the city of New York, which was continued in force by the charter of the city (section 1172, chapter 466, Laws of 1901), provides : " Section 56. No milk shall be received, held, kept, offered for sale or delivered in the city of New York without a permit, in writing, from the board of health and subject to the conditions thereof."

The provisions of the Sanitary Code, alluded to, have been held to be reasonable and a valid exercise of the police powers, and violative of no provision of the Constitution, either State or Federal. (*People ex rel. Lieberman* v. *Vandecarr*, 175 N. Y. 440 ; affirmed, 199 U. S. 552.) It has also been held that the board of health has power to revoke permits to sell milk, notwithstanding no ordinance had been adopted by the board authorizing such revocation. (*Metropolitan Milk & Cream Co.* v. *City of New York*, 113 App. Div. 377 ; affirmed in this court, 186 N. Y. 533.) These questions we regard as settled.

The only question remaining to be disposed of is as to whether the relator was entitled to notice and a hearing by the board of health before revoking his permits. The answer to this question may depend upon the soundness of the relator's contention that the permits issued to him were property, of which, under the Constitution, he cannot be deprived without due process of law. He maintains that he has established and built up a business of selling milk at his store and has a regular line of customers whom he supplies daily ; that he has established a milk route over which his wagons are sent daily distributing milk to the inhabitants of the city in that locality, and that this established business has become property, of which he cannot be deprived. But the good will of his business, so established, must not be confounded with the permits granted to him to engage in that business. He was never licensed to sell impure and adulterated milk, and after he had obtained his permits to sell and undertook the securing of customers, he knew that he was engaging in a business

which must be conducted under the supervision of the board of health of the city subject to 'the police powers of the state, and that such permits were subject to revocation. He knew that the permits contained no contract between the state, or the board of health, and himself, giving him any vested right to continue the business, and that it would become the duty of the board to revoke his license, in case he violated the statute, or the conditions under which it was granted. Milk is an article of food extensively used by our inhabitants and is chiefly relied upon to support the lives of infant children. If impure or adulterated, or polluted with germs of dangerous or infectious diseases, its use becomes highly dangerous, and the health and welfare of the public demand speedy and, in some cases, instant prevention of its distribution to the people. While it is the duty of the board of health to watch and, through its inspectors, detect violations of the statute and the conditions imposed by it, it has been given no judicial power to hear, try and determine such violations, but must act upon the information obtained by it through its own channels of inquiry. In Cooley's Constitutional Limitations (7th ed. p. 887) it is said that "Dealers may also be compelled to take out a license, and the license may be refused to a person of bad reputation, or be taken away from a party detected in dishonest practices." In *Crowley* v. *Christensen* (137 U. S. 86) Mr. Justice Field says: "It is undoubtedly true that it is the right of every citizen of the United States to pursue any lawful trade or business, under such restrictions as are imposed upon all persons of the same age, sex and condition. But the possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order and morals of the community." In *Dent* v. *West Virginia* (129 U. S. 114) the same justice, in speaking of the interest or estate acquired by persons, says: "It is often of great value to the possessors, and cannot be arbitrarily taken from them, any more than their real or per-

sonal property can thus be taken. But there is no arbitrary deprivation of such right where its exercise is not permitted because of a failure to comply with conditions imposed by the state for the protection of society. The power of the state to provide for the general welfare of its people authorizes it to prescribe all such regulations as, in its judgment, will secure or tend to secure them against the consequences of ignorance and incapacity as well as of deception and fraud." In the case of *Metropolitan Board of Excise* v. *Barrie* (34 N. Y. 667) WRIGHT, J., in delivering the opinion of the court, says : " Licenses to sell liquors are not contracts between the state and the persons licensed, giving the latter vested rights, protected on general principles and by the Constitution of the United States against subsequent legislation ; *nor are they property in any legal or constitutional sense.* They have neither the qualities of a contract nor of property, but are merely temporary permits to do what otherwise would be an offense against a general law." In other words, a license is not a contract or property, but merely a temporary permit issued in the exercise of the police powers to do that which otherwise would be prohibited. (*Youngblood* v. *Sexton*, 32 Mich. 406 ; *Commonwealth* v. *Kinsley*, 133 Mass. 578 ; *Voight* v. *Board of Excise*, 59 N. J. Law, 358.)

*Matter of Lyman* (160 N. Y. 96) is not in conflict with the authorities above referred to. The question arose under our Liquor Tax Law. That statute, as its title indicates, imposed a tax which was required to be paid in advance. It, however, could be transferred from one place to another, could be sold and assigned to other persons, and in case a person who had paid the tax desired to discontinue the business, he could have a rebate for the period of time for which he had paid, accruing after he had ceased to traffic in liquor. It was, therefore, regarded as property and could not be taken from the person paying the tax, except in the manner designated by the statute. (Laws of 1896, chap. 112, §§ 25, 26, 27.)

We incline to the view that the authorities to which reference has been made are conclusive upon the subject; and,

although the relator had established a business and secured customers under the permits granted to him, the permit itself cannot be treated as property in any legal or constitutional sense, but was a mere license revokable by the power that was authorized to issue it.   The statute, as we have seen, has given the board of health no power to hear, try or determine cases. Its duties are, therefore, not judicial but executive or administrative, and at times must be exercised summarily, as was said in *Metropolitan Board of Health* v. *Heister* (37 N. Y. 661).   "The power to be exercised by this board upon the subjects in question is not judicial in its character.   It falls more properly under the head of an administrative duty." The court in that case had under consideration the question of the abating of a nuisance, or the recovery of a penalty therefor, occasioned by the alleged maintenance of a slaughter house in a densely populated portion of the city in such a manner as to endanger the health of the inhabitants.   But we see no reason why the power of the board of health in that case should differ from the powers of the board in this case. Each have reference to the preservation of the public health, and if their powers are administrative in that case, they must be in this case.   In *People ex rel. Copcutt* v. *Board of Health* (140 N. Y. 1) the board of health of the city of Yonkers ordered the abatement of a nuisance.   The relator, affected by the determination, sought a review by certiorari.   EARL, J., after reviewing the statute creating the board and defining its powers, says : "There is no provision for a hearing before the board on the part of any person who is charged with maintaining a nuisance upon his premises.   The right to such a hearing is not expressly given and cannot be implied from any language found in either act or from the nature of the subjects dealt with in the acts.   Boards of health and other like boards act summarily, and it has not been usual any where to require them to give a hearing to any person before they can exercise their jurisdiction for the public welfare. The public health might suffer or be imperiled if their action could be delayed until a protracted hearing could be brought

13

to a termination.   There is no provision in the acts for call-
ing or swearing witnesses, and there is no general law giving
them power to do so." It was consequently held that the
determination of the board of health as to the existence of a
nuisance was not reviewable by certiorari.  (See, also, *People
ex rel. Schau* v. *Mc Williams,* 185 N. Y. 92, in which Chief
Judge Cullen has recently reviewed the authorities upon the
subject, pointing out the difference between judicial powers
and the action of administrative or executive officers.)

The powers of the members of the board of health being
administrative merely, they can issue or revoke permits to
sell milk in the exercise of their best judgment, *upon or with-
out notice,* based upon such information as they may obtain
through their own agencies, and their action is not subject
to review either by appeal or by certiorari.  (*Child* v. *Bemus,*
17 R. I. 230; *State ex rel. Cont. Ins. Co.* v. *Doyle,* 40
Wis. 220; *Wallace* v. *Mayor, etc., of Reno,* 63 L. R. A.
337.)  If, however, their action is arbitrary, tyrannical and
unreasonable, or is based upon false information, the relator
may have a remedy through mandamus to right the wrong
which he has suffered.  If the relator can show that he and
those acting for him have not been convicted of violating the
statute and the conditions imposed in the granting of the
permits, and that consequently he is a fit and proper person
to engage in the sale and distribution of milk among the
inhabitants of the city, then he would be entitled to the relief
asked for.  But if he desired to submit such evidence, he
should have asked for an alternative rather than a peremp-
tory writ.  If, however, the charge of the board is true that
he has been convicted of the offenses charged the number of
times stated, the conclusion is irresistible that he was an
improper person to be intrusted with the permit of the city
to dispense to the inhabitants of the city a food product that
was liable, if adulterated, to endanger the health of the
people.

It is now contended, however, that the members of the
board of health are judicial officers and act as such by virtue

of the provisions of section 1173 of the Greater New York charter. (Vol. 3, Laws of 1901, chap. 466.) It will be necessary to consider the whole section, for we think the subsequent provisions indicate the intention and purpose of the former. It is as follows: " The actions, proceedings, authority, and orders of said board of health shall at all times be regarded *as in their nature* judicial, and be treated as *prima facie* just and legal. All meetings of said board shall in every suit and proceeding be taken to have been duly called and regularly held, and all orders and proceedings to have been duly authorized, unless the contrary be proved. All courts shall take judicial notice of the seal of said board and of the signature of its secretary and chief clerk." Were these provisions intended to change the character of the board of health from administrative to judicial officers? We think not. They do not state that the board shall act judicially or that its orders shall be regarded and treated as the orders of a judge or court, but merely that they shall be regarded in their *nature* judicial, and that they shall be treated as *prima facie* just and legal, and that all orders and proceedings have been duly authorized. To our minds it is quite apparent that the legislative purpose and intent was to invest the orders and proceedings of the board of health with the presumption that they were duly authorized and were just and legal, and that it was not intended to change the members of the board from administrative to judicial officers. These provisions have already been the subject of judicial consideration, with a result that accords with our views. In the case of *Golden* v. *Health Department of City of N. Y.* (21 App. Div. 420, 421) Justice RUMSEY says: " It is quite true that it is provided that the action, proceedings, authority and orders of the board of health shall at all times be regarded as in their nature judicial, and be treated as *prima facie* just and legal. This provision of the statute has been in existence for many years, but it has never been regarded as making the board of health a court whose orders are final and conclusive. Indeed, it makes no provision for any such

**196**     People ex rel. Lodes *v.* Dept. of Health.     [Oct.,

Opinion of the Court, per Haight, J.          [Vol. 189.

thing.   The statute prescribes the effect which shall be given to these orders, and that is that they shall be regarded as *prima facie* legal.   Thus much was clearly within the power of the legislature; and the statute imposes upon persons who question the orders of the board of health in such cases the duty of establishing that the facts upon which they are based do not exist, or that the orders themselves are beyond the authority given to the board by the law.   Further than that the statute does not go."

*City of Buffalo* v. *Chadeayne* (134 N. Y. 163) was an action to recover a penalty for an alleged violation of an ordinance prohibiting the erection of a wooden building within the fire limits of the city.   The common council had passed a resolution giving the defendant permission to erect such building.   He thereupon entered upon the construction of the building and incurred liabilities for work and material and had a property interest in them.   Thereafter the common council rescinded the permit, and after the defendant had completed the building, the city brought action for a penalty. It was held that, after the defendant had entered upon the construction of the building pursuant to the permit, and had entered into contracts and incurred liabilities, he acquired a vested right of property therein of which he could not be deprived.   This case is not in conflict with those to which we have referred, but rather is in accord therewith, and illustrates the difference that exists between permits under which a vested right may be acquired and those in which such rights do not vest; one is a permit to construct a building and the other a permit to peddle milk.   To the same effect is *Dobbins* v. *Los Angeles* (195 U. S. 223) and *City of Lowell* v. *Archambault* (189 Mass. 70).

The order should be reversed and the application for a mandamus denied, with costs in all courts, unless the relator within twenty days elects to demand an alternative writ, in which case the proceedings should be remitted to the Special Term, and the costs should abide the final award of costs.

Vann, J. (dissenting).   If the order revoking the license of
the relator was an administrative act, no notice to him was
required, but if it was an act done in the exercise of judicial
power, notice and an opportunity to be heard were essential
before he could be deprived of the right to carry on a lawful
business.

The Greater New York charter provides that: "The
actions, proceedings, authority and orders of said board
of health shall be at all times regarded as in their nature
judicial and be treated as *prima facie* just and legal." (L.
1901, ch. 466, § 1173.)

While it is difficult to see how all acts of the board of
health can be "in their nature judicial," the legislature had
the right to provide that they should be so regarded, and in
view of its express command I fail to see how we can hold that
the order of revocation was an administrative act.   Notice
was given in the only case involving the power to revoke
that has been before us prior to the one now under consider-
ation.   (*Metropolitan Milk and Cream Co. v. City of New
York*, 113 App. Div. 377 ; 186 N. Y. 533.)   While summary
action is often necessary in cases affecting the public health,
still the danger from delay caused by giving short notice is
less than the danger that may arise from action with no notice
at all.   The respondent should at least have had an oppor-
tunity to raise an issue as to whether he had ever been con-
victed by a court of competent jurisdiction of violating the
Sanitary Code or to show that any judgment of conviction
had been reversed or set aside.

Moreover, a license under the police power, as distinguished
from the taxing power, involves the right to regulate but not
to prohibit, and it cannot be exercised capriciously or arbi-
trarily.   As the right to revoke is not expressly conferred,
but is implied from the right to grant, the rule against arbi-
trary or capricious action applies with equal force to the revo-
cation of licenses.   One of the most effective safeguards
against the arbitrary acts of public officials is an opportunity
to be heard.   The revocation of the respondent's license

involved the destruction of his business which was useful, legitimate and profitable. Since the power to revoke is not expressly given, but is implied from the power to grant, I think the law also implies that notice must be given before an act can be done which involves such serious loss to the licensee. This involves the conclusion that the revocation of such a license as the one in question is in its essence judicial, independent of the statutory requirement that it shall be so regarded. I vote to affirm.

CULLEN, Ch. J., O'BRIEN, EDWARD T. BARTLETT, HISCOCK and CHASE, JJ., concur with HAIGHT, J.; VANN, J., reads dissenting opinion.

Order reversed, etc.