In the Matter of the Application of HENRY MORRIS, Petitioner, for a Peremptory Order of Mandamus.

Supreme Court, New York County, November 22, 1926.

**Municipal corporations — peremptory order of mandamus to compel department of health of city of New York to issue permit for sale of milk — department revoked permit after hearing, where petitioner's competitors testified petitioner was using irregular methods to procure trade — evidence fails to show petitioner was guilty of any illegal acts — mandamus order granted.**

Petitioner, whose permit to sell and deliver milk and milk products in the city of New York was revoked by the department of health of said city, is entitled to a peremptory order of mandamus compelling said department to issue a permit, where it appears that, notwithstanding the fact that the evidence at a hearing had before the trial board of the health department failed to show that petitioner was guilty of any illegal acts in the prosecution of his business, said department revoked his permit upon the testimony of competitors to the fact that he was using irregular methods in procuring trade, particularly where the only complaint said competitors put forth was that the petitioner was selling milk at a price lower than the so-called market rate.

It was not illegal for the petitioner to deliver milk free of charge to certain dealers and make cash payments to other dealers for the purpose of procuring their business.

APPLICATION for a peremptory order of mandamus.

*Slade & Slade,* for the petitioner.

*George P. Nicholson, Corporation Counsel,* opposed.

GLENNON, J.    The petitioner, Henry Morris, was the holder of a permit to keep, sell and deliver milk and milk products in the city of New York, which was issued to him by virtue of the provisions of section 155 of the Sanitary Code (Code of Ordinances of the City of New York, chap. 20) on June 11, 1926, after an application had been filed with the board of health on April 19, 1926. He engaged in business first at No. 409 East One Hundred and Eighth street, New York, and thereafter at No. 521 West Twenty-seventh street.    He has invested upwards of the sum of $10,000 since the permit was issued to him..    On September eighth last petitioner received a notice from the department of health that his permit had been revoked.    He avers that the permit was revoked arbitrarily, unjustly, unlawfully and illegally.    It appears that petitioner is an independent milk dealer.    It is alleged by him that the revocation was prompted, inspired and directed by certain milk dealers, members of an organization known as the Greater New York Milk Dealers' Chamber of Commerce, " for the sole and only purpose of driving your petitioner out of the milk business so that the Milk Dealers' Association and the members thereof will have no competition to meet from your petitioner." On August 24, 1926, one Patrick Mullen, treasurer of the Greater New York Milk Dealers' Chamber of Commerce, and one Barnet Metzger, its secretary, made a complaint to the department of health, to the effect that petitioner had violated a so-called order which was given on July 26, 1926, at a meeting of the board of health to which all the wholesale milk dealers or jobbers were invited.    At this meeting the dealers who attended were advised that " fair competition was always in order and would not be looked upon with disfavor, but that unfair competition, such as the solicitation or the taking away of another dealer's customer, by the giving of free milk, or a cash inducement, or the slashing of prices out of relation to the prevalent market price, would be looked upon with disfavor by this Department as it tended to precipitate these trade wars, in which the sale of adulterated or a low quality of milk generally followed; that any such unfair practises, as hereinabove stated, on the part of any dealer, would be treated as an act that tends to undermine the purity and

wholesomeness of the milk supply of this city, and would be ground for revocation of the dealer's permit as a person unfit to sell and deliver milk in the City of New York; that these dealers were then informed to report any infraction of this order, and not to retaliate, under any circumstances, as they had theretofore, and that this Department would thoroughly investigate and properly dispose of any such violations as were reported by them." On September first a hearing of the charges preferred by Mullen and Metzger was held before the trial board of the department of health. The following recommendation was made to the board of health:

" The Board feels that the two complainants, Barnet Metzger of Tietjen & Steffen Co., Inc., and Patrick Mullen of Mullen & Meyer, have in the past by their own admission and by the testimony of the witnesses before the Board used the same irregular methods of securing trade as they now accuse Henry Morris of using; so far as the Board has been able to ascertain, there is no evidence, however, that Patrick Mullen of Mullen & Meyer and Barnet Metzger of Tietjen & Steffen Co. Inc., have continued these irregular trade practices since the Commissioner's order that there shall be no inducements offered by one jobber to secure the trade of customers of another jobber. The Board recommends that the Acting Director of the Bureau of Food and Drugs carefully supervise the trade of these two firms for the purpose of detecting illegal practices, if there are any, either in holding or securing customers.

" After due and careful consideration and examination of the testimony adduced at the hearing of the complaint against Henry Morris, the Board recommends that the permit heretofore issued to Henry Morris to sell milk and milk products in the City of New York be revoked."

On September 7, 1926, the permit was revoked.

Assuming that petitioner did deliver milk free of charge to certain dealers and made cash payments to other dealers for the purpose of procuring their business, he was not guilty, as far as I have been able to discover, of the commission of any illegal acts. If he can successfully sell pure milk of the required standard to the distributors at prices lower than the so-called market rate, other dealers can, and eventually must, do likewise with a resulting reduction in cost to the consumer. In that way the public will receive the benefit derived from open competition. It seems to me that a strict enforcement of the penal laws, with severe penalties for violation, will result in keeping milk and milk products pure and wholesome. If the possibility of adulteration, as a result of free competition, brings about a departmental policy which practically eliminates competition, then the effect is to deprive the

public of the benefits which it has heretofore derived from the enforcement of section 340 of the General Business Law (as amd. by Laws of 1921, chap. 712), commonly called the Donnelly Act. The purpose of this particular provision of our law " is to destroy monopolies in the manufacture, production and sale in this State of commodities in common use, *to prevent combinations in restraint of competition in the supply or price of such commodities, or in restraint of the free pursuit of any lawful business, trade or occupation.*" (*Matter of Davies,* 168 N. Y. 89.)

In *People ex rel. Lodes* v. *Department of Health* (189 N. Y. 187) Judge HAIGHT said, in part (p. 194): " The powers of the members of the board of health being administrative merely, they can issue or revoke permits to sell milk in the exercise of their best judgment, *upon or without notice,* based upon such information as they may obtain through their own agencies, and their action is not subject to review either by appeal or by certiorari. \* \* \* If, however, their action is arbitrary, tyrannical and unreasonable, or is based upon false information, the relator may have a remedy through mandamus to right the wrong which he has suffered. If the relator can show that he and those acting for him have not been convicted of violating the statute and the conditions imposed in the granting of the permits, and that consequently he is a fit and proper person to engage in the sale and distribution of milk among the inhabitants of the city, then he would be entitled to the relief asked for. But if he desired to submit such evidence, he should have asked for an alternative rather than a peremptory writ. If, however, the charge of the board is true that he has been convicted of the offenses charged the number of times stated, the conclusion is irresistible that he was an improper person to be intrusted with the permit of the city to dispense to the inhabitants of the city a food product that was liable, if adulterated, to endanger the health of the people."

In the *Lodes* case it appeared that the relator, his wife and the drivers of his wagons had been four times convicted of selling, or offering for sale, adulterated milk. In this proceeding it appears that petitioner had not been convicted of an illegal practice, at least since the board of health issued the permit to him, and has conformed to the spirit and intent of the General Business Law by the breaking down of prices of milk in fair competition with others. Since the litigation was based upon the findings of the trial board of the department of health I see no necessity for the issuance of an alternative order, but feel that the petitioner is entitled to the relief he seeks. Settle order.