Joseph Cannon, as President of the Carver Cultural Society of the City of Albany, Plaintiff, *v.* Neile F. Towner et al., Constituting the Board of Education of the City of Albany, Defendants.

Supreme Court, Special Term, Ulster County, May 6, 1947.

*Arthur J. Harvey* for plaintiff.

*John Braun* for American Civil Liberties Union, *amicus curiæ.*

*Emanuel H. Bloch* for Civil Rights Congress, *amicus curiæ.*

*Leonard M. Lake* for National Lawyers' Guild, *amicus curiæ.*

*James J. McGuiness, Corporation Counsel,* for defendant.

*George W. Greene* for Albany County Committee, American Legion, *amicus curiæ.*

BOOKSTEIN, J. Plaintiff is the president of an unincorporated association existing to promote the welfare and develop the cultural life of the Negro in the community with special emphasis upon the contribution made by the Negro. As part of its objects, it brings world-renowned Negro artists to Albany for the purpose of showing the Negro's contribution to the culture of America and for the purpose of contributing to the community life of Albany. It is named after the world famous Negro scientist, George Washington Carver.

The defendants compose the Board of Education of the City of Albany and accordingly are in charge of the public school buildings in said city.

Among such schools is the Philip Livingston Junior High School, which is equipped with a large auditorium.

On or about August 25, 1946, plaintiff applied for permission to use the aforesaid auditorium for a concert to be held on

May 9, 1947, at which the famous Negro singer, Paul Robeson, to the knowledge of defendants, was to be the artist.

The request of plaintiff's association was granted in a letter of which the following is a copy:

" CITY OF ALBANY, N. Y.

BOARD OF EDUCATION

JOHN W. PARK, *Superintendent*

September 30, 1946

MRS. SAMUEL B. REED
285½ Hudson Avenue
Albany, New York
DEAR MRS. REED:

The Board of Education at a meeting held September 18, 1946 received your letter under date of August 25, 1946 requesting the use of a school auditorium.

The Board granted you the use of the Philip Livingston Junior High School auditorium as requested on the evening of May 9, 1946 [*sic*] in order that your group, the Carver Cultural Society of the Israel A.M.E. Church, may present a musical program. The Board voted to charge the usual fee to cover the overhead cost for the use of these facilities, i.e., Fifty dollars ($50) and this sum should be paid in advance to Mr. John R. Quinn, Business Manager, School Administration Building.

Very truly yours,

(Signed)     JOHN W. PARK
*Superintendent of Schools*

JWP:mf "

Subsequently, plaintiff's association caused advertising cards of the event to be printed and distributed; it advertised, and arranged for further advertising, in the newspapers in three cities; it printed and sold tickets, in accordance with the seating capacity of the auditorium; it had contracted with Paul Robeson to render a concert on the night fixed, agreeing to pay him $2,000, of which $300 has already been paid.

On April 22, 1947, defendant, without any prior notice or intimation to the plaintiff, and without any hearing, cancelled the permission, given in writing nearly seven months before.

The cancellation was by a letter of which the following is a copy:

" CITY OF ALBANY, N. Y.
BOARD OF EDUCATION
JOHN W. PARK, *Superintendent*

April 22, 1947

MRS. SAMUEL B. REED
285½ Hudson Avenue
Albany, New York
MY DEAR MRS. REED:

The Board of Education today directed that the reservation
for the use of the Philip Livingston Junior High School on
Friday evening, May 9, 1947, by the Carver Cultural Society,
be cancelled.

Very truly yours
(signed)     JOHN W. PARK
*Superintendent of Schools*

JWP:mf "

It is to be noted that the cancellation notice states no reason
whatsoever for the action thus taken by the defendant.

Immediately upon the receipt thereof, a representative of
plaintiff's association telephoned to Dr. John W. Park, the
Superintendent of the Albany public schools and asked for the
reason for the cancellation and was informed by him that he
wrote the letter of cancellation, upon orders from the President
of the Board of Education, to whom the inquirer was referred
for any further information.

Such representative then telephoned Mr. Neile F. Towner,
the President of the Board of Education, and was informed by
him that the Board would not have " that man in the school
to sing "; that when he asked Towner to whom he was referring,
the answer was " You know." When Towner was asked " Do
you mean Paul Robeson? ", his answer was " yes."

Towner's own version of that telephone conversation is
quoted from his affidavit as follows: " 6. That on Wednesday,
April 23, 1947, deponent received a telephone call from a man
who stated that he was Samuel B. Reed, in which Mr. Reed
requested an explanation for the cancellation of said permit.
That deponent informed Mr. Reed that the reason the Board
of Education had cancelled said permit was that they objected
to Mr. Paul Robeson's appearing in the auditorium of a public
school. That upon Mr. Reed's inquiring what the objection was,
deponent stated that he, Mr. Reed, ought to know the reason for
said objection. Deponent further asked Mr. Reed why he did
not secure some singer such as Marion Anderson to whom the

Board would have no objection whatsoever. That deponent had no further conversation with Mr. Reed."

It thus appears, without contradiction, that neither in the letter of cancellation nor in the telephone interview with Towner and defendant's representative Park, was any reason assigned for the cancellation, except objection to Robeson.

Thereupon plaintiff commenced this action for an injunction, restraining defendant from interfering with the scheduled concert and plaintiff now moves for a temporary injunction for like relief, during the pendency of the action.

Defendant opposes the application, first, on the ground that this court is without jurisdiction because plaintiff's remedy is by an appeal to the State Commissioner of Education and second, on the ground that the cancellation was made because the concert singer engaged by plaintiff's association, Paul Robeson, is a Communist or a party-line follower and third that, in any event, the action of the defendant is an exercise of discretion vested in it by law and brooks no interference by the courts.

We shall direct our attention to the first proposition since, if defendant's contention, with respect thereto is correct, the court is without jurisdiction, cannot consider the merits of the controversy and must deny the application.

Section 455 of the Education Law, so far as pertinent, reads as follows: "Schoolhouses * * * and all property belonging to the district shall be in the custody and under the control and supervision of the * * * board of education of the district. The * * * board of education may adopt reasonable regulations for the use of such schoolhouses * * * or other property, when not in use for school purposes, for such other public purposes as are herein provided. Such regulations shall not conflict with the provisions of this chapter and shall conform to the purposes and intent of this section and shall be subject to review on appeal to the commissioner of education as provided by law. The * * * board of education of each district may, subject to regulations adopted as above provided, permit the use of the schoolhouse and rooms therein, * * * when not in use for school purposes, for any of the following purposes: * * * 4. For meetings, entertainments and occasions where admission fees are charged, when the proceeds thereof are to be expended for an educational or charitable purpose * * *."

Section 890 of the Education Law, so far as pertinent reads as follows: "Any person conceiving himself aggrieved may appeal or petition to the commissioner of education who is hereby authorized and required to examine and decide the same; * * * and his decision in such appeals * * * shall be final and conclusive, and not subject to question or review in any place or court whatever. Such appeal * * * may be made in consequence of any action: * * * 7. By any other official act or decision of any officer, school authorities, or meetings concerning any other matter under this chapter, or any other act pertaining to common schools."

Based on the language employed in these two sections of the Education Law, defendant contends that plaintiff is barred from seeking the relief prayed for by way of an injunction and is remitted as an exclusive remedy for the alleged grievance to an appeal to the State Commissioner of Education.

To sustain its contention that plaintiff's exclusive remedy is an appeal to the State Commissioner of Education, the learned attorney for defendant cites three cases, viz., *Matter of Chapin* v. *Board of Education* (291 N. Y. 241), *Matter of Liebman* v. *Van Denburg* (168 Misc. 155) and *People ex rel. Peixotto* v. *Board of Education* (160 App. Div. 557, affd. 212 N. Y. 463).

The cases thus cited fail to support or sustain the contention made by defendant.

In *Matter of Chapin* v. *Board of Education* (*supra*) the aggrieved parties *elected to and did appeal to the Commissioner of Education and after an adverse determination by him resorted to the courts.* The court held that, *having appealed to the Commissioner, his decision was final and binding and in such a situation resort to the courts is forbidden by the express language of section 890.*

In *Matter of Liebman* v. *Van Denburg* (*supra*) the aggrieved party likewise elected to appeal to the Commissioner of Education. Not satisfied with the procedure followed by the commissioner in conducting the hearing, the aggrieved party instituted a proceeding seeking to have the courts direct the manner of the procedure of the commissioner. This the court declined to do, on the ground that the Education Law left to him the manner of procedure to be followed. And even then the court said it was to be left with him, "assuming that the result reached is not unreasonable or arbitrary * * *."

In *People ex rel. Peixotto* v. *Board of Education* (160 App. Div. 557, affd. 212 N. Y. 463, 466, *supra* [1914]) by a widely divided court, the Court of Appeals merely held that " The general rule is that mandamus will not lie to review the determination of public boards or officers in matters involving the exercise of discretion or judgment, if they have proceeded within their jurisdiction, and in substantial compliance with the forms of law.''

In that case the Court of Appeals did not pass upon the question of whether an appeal under section 890 of the Education Law was the sole and exclusive remedy of the aggrieved party. It is true that in that case, in the Appellate Division, the court said that if the school teacher who had been removed for neglect of duty (p. 562) "* * * has any grievance, it is with respect to the sufficiency of the evidence to sustain the charge, and on that question she had her statutory remedy by appeal to the State Commissioner of Education * * * which she should have exhausted before invoking the aid of the court. But in so holding we express no opinion on the question as to whether, in the event that her appeal authorized by the statute should be unsuccessful, she could obtain redress by mandamus or other proceeding or action * * *.''

If by the most liberal interpretation, it can be held that this case is an authority in support of defendant's contention, then in view of the later cases which have determined that an appeal to the commissioner bars resort to the courts, such decision must now be deemed to be overruled and obsolete.

On the other hand, there are numerous decisions in the Supreme Court, Appellate Division and Court of Appeals which hold that the appeal provided for in section 890 of the Education Law is permissive and not mandatory and that it is not the exclusive remedy of an aggrieved person and that resort to such an appeal may bar a remedy in the courts. (*Nichols* v. *Scanlon*, 196 N. Y. S. 1; *Matter of Moses* v. *Board of Education of Syracuse*, 127 Misc. 477; *Matter of Jacobson* v. *Board of Education of City of N. Y.*, 177 Misc. 809; *Matter of Citron* v. *O'Shea* 244 App. Div. 158; *Lorenz* v. *Board of Education*, 264 N. Y. 591.)

This court is constrained, both by reason and the overwhelming weight of authority to hold that the remedy of an appeal to the commissioner under section 890 of the Education Law is neither the sole nor exclusive remedy of plaintiff.

Accordingly, this court has jurisdiction of the subject matter of this action.

We come now to a consideration of the merits of the controversy.

As we have already seen, neither the letter of cancellation nor the telephone conversation with Towner gave any reason for the cancellation of the permission theretofore given to plaintiff for the use of the Philip Livingston Junior High School for the Robeson concert, except objection to Robeson.

The alleged justification for the cancellation, in part, is set forth in the answering affidavit of Towner as follows: " 2. That on the morning of April 22, 1947 Erastus Corning II, Mayor of the City of Albany, telephoned deponent and inquired of him whether a permit had been given for the use of the auditorium at one of the High Schools at which Paul Robeson was to sing and called deponent's attention to the fact that Paul Robeson was named by a Committee of the House of Representatives known as the Committee on un-American Activities as one of a group invariably found supporting the Communist Party and its front organization and that also on one occasion said Paul Robeson had sung as an encore at a concert Communistic songs. * * * 14. That there was furnished by Robert E. Stripling, Chief Investigator of the Committee on Un-American Activities of the United States House of Representatives, a report, copy of which is hereto attached, which contains information from the files and publications of said Committee concerning activities of said Paul Robeson."

The report thus referred to is dated April 29, 1947, a full week after the sending of the letter of cancellation. As a matter of fact it is entitled: " Information from the Files of the Committee on Un-American Activities, U. S. House of Representatives. Subject: Paul Robeson."

Obviously, from its date, this report was not before the defendant when it issued its cancellation.

In any event, for the purposes of disposing of this motion, and without so deciding, this court will assume that the report establishes conclusively that Robeson is either a Communist, or a fellow traveler or that his ideology and philosophy are Communistic.

So far as the papers presented to this court are concerned, the only thing before the defendant when it cancelled was the telephone call from the Mayor of the City of Albany to defendant Towner, "calling " his " attention to the fact that Paul Robeson was named by a Committee of the House of Representatives known as the Committee on Un-American Activities

as one of a group invariably found supporting the Communist Party and its front organization and that also on one occasion said Paul Robeson had sung as an encore at a concert Communistic songs."

On the very day of that telephone call, the letter canceling the permission granted to plaintiff's association was sent to its representative.

Stripped of all superfluities the case reverts to the simple proposition that although plaintiff's association had received permission from defendant in September, 1946, to hold the concert on May 9, 1947, with full knowledge on its part that the concert artist was to be Robeson, on April 22, 1947, it cancelled the permit, because on that date it learned through a telephone call from the mayor that Robeson was named by a Congressional Committee as supporting the Communist Party or its front organization; that after such telephone conversation, Towner conferred with Conway, the third member of the Board of Education, Harris, being out of the city; that subsequently on the return of Harris to the city, he confirmed the action taken by the other two members.

Defendant now contends that the acts of the Board of Education in granting or refusing to grant permission for the use of any school out of school hours are strictly discretionary under section 455 of the Education Law.

The general proposition thus stated is quite elementary, and in the first instance the discretion of the board is very broad and courts would be very loath to interfere with its determination granting or refusing permission to use a school building. But even in that case the discretion cannot be arbitrarily exercised.

It is elementary that a naked license is revocable at the will of the licensor and if the permission here granted is a naked license, then perhaps there could be no interference with the act of defendant in canceling the same.

Since the original permission was granted, plaintiff's association, relying thereon, has altered its position to its detriment; it has sold tickets, advertised, etc.; and a consideration of $50 was fixed by defendant for the use of the school in question.

Here we are not dealing with a bare or naked license. While the permit does not attain the dignity of a lease, because it lacks some of the elements which characterize a lease, it is nevertheless a license, coupled with an interest, arising out of a contract, founded on a consideration fixed by defendant.

A license coupled with an interest is not revocable at will. (*Fast* v. *Realty Freehold Corp.*, N. Y. L. J., Feb. 27, 1947, p. 786, col. 2; 2 Thompson on Real Property [Perm. ed.], § 719.)

If that be the rule between private parties, it is no less the rule between a State or local governmental agency and a citizen.

" The State, in all its contracts and dealings with individuals, must be adjudged and abide by the rules which govern in determining the rights of private citizens contracting and dealing with each other. There is not one law for the sovereign and another for the subject * * *." (*People* v. *Stephens*, 71 N. Y. 527, 549.)

Moreover the Board of Education is a creature of statute. It derives its powers, obligations and duties from the statute which created it, to wit, the Education Law.

By express provision of that law, section 455, the Board of Education is expressly permitted to adopt reasonable regulations to permit the use of schoolhouses, subject to such regulations, for six specifically enumerated purposes.

Plaintiff's attorney, on the oral argument, asserted that defendant has adopted no such regulations. Defendant has not denied such allegation either on the oral argument or in its answering affidavits; and if any such regulations do in fact exist, they have not been furnished to the court by the defendant.

Presumably, there are none.

Among the purposes for which the use of a schoolhouse is permitted, the concert now in dispute is one, under subdivision 4 of said section. Certainly, defendant must have so determined, or it would not have issued the permit in the first instance.

Nowhere in section 455 is any authority conferred upon the Board of Education to cancel a permit, when once issued, with the single exception of the fifth purpose, for which permission to use a schoolhouse is authorized.

Subdivision 5 of section 455 of the Education Law reads as follows: " For polling places for holding primaries and elections and for the registration of voters, and for holding political meetings. But no political meetings shall be permitted unless authorized by a vote of a district meeting, held as provided by law, or, in cities by the board of education thereof. Except in cities, it shall be the duty of the trustees or board of education to call a special meeting for such purpose upon the petition of at least ten per centum of the qualified electors of the district. *Authority so granted shall continue until revoked in*

*like manner and by the same body as granted."* (Italics supplied.)

In no other portion of said section is there any power conferred to revoke a permit or any reference to the subject of revocation made.

It is an elementary rule of statutory construction that when a definite provision is made with reference to one particular subdivision of a section of the law dealing with the identical subject matter as the other subdivisions thereof, and a similar reference is omitted from the other subdivisions thereof as well as from all of the rest of the section, the particular reference is intended to apply solely to the subdivision in which it is contained and to exclude its application from all of the rest.

Accordingly, it is evident, that while the Legislature conferred upon the Board of Education the power to adopt reasonable regulations for the use of a schoolhouse for the purposes enumerated in the statute, it did not confer upon it the power to revoke a permit, once issued, save in the single instance of the use of schoolhouses for certain political purposes, which permit, once granted, is to continue *" until revoked in like manner and by the same body as granted."*

The Board of Education therefore has no express power to cancel a permit of the nature issued in the instant case under subdivision 4 of section 455 of the Education Law.

In view of the legislative enactment, granting the power in the one instance and withholding it in the others, the court must also hold that the Board of Education has no implied power to make the cancellation which it attempted in this case.

No case has been brought to the court's attention by any of the counsel which has been decided by the courts of this State or for that matter by the Commissioner of Education in which the question of the power of the Board of Education to cancel or revoke a permit or license issued pursuant to section 455 of the Education Law, was involved or passed upon; nor, in the brief time available, has independent research discovered any.

Cases involving other public boards or bodies, however, lead to the conclusion reached by this court.

In *People ex rel. Lodes* v. *Dept. of Health* (189 N. Y. 187) the Board of Health of the City of New York issued to Lodes six permits to sell and deliver milk, which permits were subsequently revoked, on the ground that Lodes had been convicted of selling adulterated milk. The Sanitary Code provided that

"No milk shall be received, held, kept, offered for sale or delivered in the city of New York without a permit, in writing, from the board of health and subject to the conditions thereof."

In that case the court said at page 190: "It has also been held that the board of health has power to revoke permits to sell milk, *notwithstanding no ordinance has been adopted by the board authorizing such revocation. (Metropolitan Milk & Cream Co.* v. *City of New York,* 113 App. Div. 377; affirmed in this court, 186 N. Y. 533.)" (Italics supplied.)

Thus it will be seen, by inference, at least, that a statute or ordinance conferring the power on a public board or body to issue a permit, does not ordinarily imply the power to revoke the permit.

True, in the *Lodes* case (*supra*) the Court of Appeals held that, *in the case of a permit to handle milk,* the power of revocation existed without express authority of statute.

And the court cited as authority for its holding the case of *Metropolitan Milk & Cream Co.* v. *City of New York* (113 App. Div. 377, affd. 186 N. Y. 533).

In that case, permits to handle milk were issued. The permits among other things contained the following provision: "This permit * * * is revokable [*sic*] at the pleasure of the Board * * *."

The board claimed that the permittee or licensee was shipping in adulterated milk. Despite the provision in the permit as to revocation, the board gave notice to the permittee of the charges, held a hearing, sustained the charges and then revoked the permits.

The licensee contended that the permit was irrevocable.

The court said, at pages 381–382: "The sole authority that the health board would have, if this contention were correct, would be to prosecute the person selling the poisonous article in the shape of milk, fine him, and in the meantime such person could go on poisoning the people under a permit or license from the health authorities, a proposition which is so unreasonable that a mere statement is sufficient to refute it. There is nothing in either the Penal Code or the charter that makes such a permit irrevocable. The permit itself provides that it is revocable at the pleasure of the board, and the plaintiff accepted it with that condition; there is nothing unreasonable in this condition; and irrespective of the general power of the board of health to revoke a permit which is being abused and under which the person accepting it and using it is persistently violating the

law, it is certainly not an unreasonable condition to insert into such a permit a provision that it is revocable by the board that issues it. To hold that a permit once granted is irrevocable would be to totally defeat the object of the statute in requiring such a permit before a person should engage in the business of supplying to the inhabitants of a city food."

Thus, it will be seen, that in that case the court held the license revocable both because the license contained a provision making it revocable and on the grounds of the broad general police power to safeguard the public health.

It is difficult to imagine that any reasonable person could dissent from the exception from the general rule thus made by the courts in the case of the sale of so necessary and widely used a commodity as milk.

The exception thus made reinforces the conclusion of the existence of the basic rule that a permit of the nature of the one involved in this case, once issued by a public officer or body, cannot be revoked by it, without express authority or at the very least a reservation of a right or power to cancel or revoke, attached as a condition to the original permit.

Nor can it be said that public health is so affected by a proposed musical concert, because the artist who is to render the same has a particular political philosophy or ideology so as to justify a court to disregard established legal principles or rights.

There is no claim asserted by defendant that there is any deviation from the purpose for which the permit in this case was issued, i.e., a musical concert by Paul Robeson. Defendant's only asserted reason for its action is the political philosophy or ideology of Robeson. That philosophy or ideology, however objectionable to the vast majority of American citizens, has nothing to do with the purposes for which the permit was originally granted, to wit, a musical concert.

If it be said that situations may arise where a permit once granted by the Board of Education ought in the public interest to be cancelled, it is a sufficient answer that the Education Law confers upon the Board of Education ample power to protect the public interest, by the simple expedient of exercising the power conferred upon it by the Education Law of adopting " reasonable regulations for the use of * * * schoolhouses " under permits issued for the purposes fixed by the statute, which regulations could contain a provision reserving to the Board of Education the right of revocation, for the

reasons to be enumerated in such rules, and the permits then issued could expressly contain the reservation thus provided for.

Such regulations are subject to review (Education Law, § 455) and even a revocation made pursuant to any such regulations would be subject to judicial review to preclude any arbitrary and unreasonable revocation.

In the instant case, moreover, not only were no regulations adopted by the board but the permit issued contained no reservation of a right of revocation.

In *Gredinger* v. *Higgins* (139 App. Div. 606) a license was issued by the Department of Parks and was subsequently revoked. The court enjoined defendant from acting under the revocation and from interfering with plaintiff's enjoyment of his permit, on the ground that the revocation was unwarranted.

And in that case, the Department of Parks, apparently recognizing its lack of power to revoke the permit, once issued, even inserted in the written agreement between the parties granting the license, a provision for revocation or cancellation thereof.

In *Matter of Katz* v. *Moss* (184 Misc. 133, 136) the court stated: " Concededly there is no property right in a license granted by governmental favor. Once given, however, it may not, save in exceptional circumstances not here present, be taken away at the option or whim of the licensor."

To recapitulate, the Board of Education has neither the express nor the implied power to cancel the permit which it issued. It did not either by regulations adopted or by express reservation in the permit issued, reserve to itself the right of revocation, which it had the power to do and could have done, subject only to a judicial review as to the reasonableness of its action in exercising the reserved right of revocation.

Accordingly the court concludes that the defendant was without power to revoke or cancel the permit or license which it issued to plaintiff and that its act in so doing was illegal and void.

Plaintiff is entitled to the relief sought.

In that connection, it should be borne in mind that the permit of the Board of Education is for a " musical concert " and nothing else. In fact, counsel for plaintiff, in open court, asserted that nothing but a " musical concert " is contemplated and filed the program therefor as an exhibit.

The injunction to issue is to restrain defendants only from interfering with a " musical concert " which is the sole purpose for which the permit was issued.

Submit order.