In the Matter of Louis Katz, Petitioner, against Paul Moss, as Commissioner of Licenses of the City of New York, Respondent.

Supreme Court, Special Term, Kings County, September 11, 1944.

*Hyman Barshay* for petitioner.

*Ignatius M. Wilkinson, Corporation Counsel* (*Harry Hollander* of counsel), for respondent.

Nova, J. Application is made for the restoration of petitioner's license to operate a poolroom which respondent has revoked or threatens to revoke. The field within which judicial

review may be sought of the discretion vested in an administrative officer is, of course, a narrow one.

" The petitioner," points out the Court of Appeals in *Matter of Small* v. *Moss* (277 N. Y. 501, 507), " can succeed only if he establishes a clear legal right to a license. It follows that every allegation which, if proven, would establish or defeat such legal right is material. The Legislature may vest in a licensing officer a measure of discretion in granting or refusing a license. It determines the field of administrative discretion. Into that field the courts may not enter. Refusal to grant a license is arbitrary only when it is not based on a reasonable exercise of the discretion vested in the licensing officer. The limits of reasonable discretion are transgressed where refusal is based upon a ground which under the statute the licensing officer may not consider or upon a ground which is not supported by any evidence. (*Matter of Larkin Co.* v. *Schwab*, 242 N. Y. 330.) Arbitrary refusal of a license in such case to a fit and proper applicant is a wrong to him; and ' he has a remedy through mandamus to right the wrong which he has suffered.' (*Matter of Picone* v. *Commissioner of Licenses*, 241 N. Y. 157, 160.) Whether or not an applicant has a clear legal right to a license depends, then, upon the question whether a refusal would be arbitrary or capricious, or whether a refusal would be justified by the existence of conditions which, under the provisions of the statute, might furnish reasonable ground for refusal by the licensing officer, in the exercise of a discretion vested in him."

Respondent has made his return to the petition and in it he recites certain complaints filed with the department of licenses by the police department, based upon " arrests " made and " summonses " issued by members of the latter department, following which respondent accorded the petitioner a " hearing " on August 11, 1944.

" As a result of said hearing," respondent then states " and in view of said arrest made and summonses issued in petitioner's pool and billiard parlor, together with the fact that numerous arrests had previously been made in petitioner's establishment for various illegal activities and that repeated recommendations were made by the police department that petitioner's license be revoked, respondent, in the exercise of the discretion vested in him by law, denied petitioner's application for a renewal of his license."

A stenographic record of testimony taken at such " hearing " and copies of the complaints referred to are attached to and made part of the return.

Specific mention is made in the return of but one arrest (that of November 29, 1943), and of two summonses which were issued (those of December 3, 1943, and May 1, 1944). The arrest was of one of petitioner's employees on a misdemeanor charge for allegedly allowing a fifteen-year-old boy to take part in a game of pool. The disposition of this case, as revealed in the papers, was "discharged on own recognizance" — a disposition which was made on the motion of the district attorney. This, at most, may be deemed equivalent to the so-called "Scotch verdict" of "not proven," although respondent, at the "hearing" accorded petitioner, chose to put a different interpretation thereon, stating: "Comm. Moss: (To Licensee) 'That means you were guilty but it wasn't serious and they didn't punish you; it is held against you.'" The disposition, of course, meant nothing of the sort.

The first summons was issued to another of petitioner's employees for an alleged violation of a section of the Administrative Code of the City of New York (L. 1937, ch. 929, § B32–41.0) (no attendant's license). This complaint was dismissed. The second summons was issued for alleged violation of a local law (Administrative Code of City of New York, § C26–1440.0; Local Laws, 1943, No. 29 of City of New York) (failure to display a sign showing the number of persons allowed to congregate on the premises). This case was still undisposed of at the time of the hearing before respondent. Subsequently, it, too, was dismissed.

The stenographic minutes of the hearing show that, in addition to the instances cited above, respondent permitted a police sergeant to read into the record an enumeration of fifteen additional "arrests" and one "summons" going back to 1930 — a period of more than fourteen years — all of which resulted in dismissals insofar as petitioner was involved and insofar as anyone else was involved, except that on two occasions (1930 and 1933) certain persons, evidently patrons, were convicted of disorderly conduct, but the character of their offense evidently was not considered to be too serious, for they received suspended sentences.

That is the sole basis, as revealed in the return, upon which a renewal of petitioner's license — after uninterrupted annual renewals for thirteen years — has been denied. Granting that considerable latitude is accorded at an administrative hearing and that the responsible head of the department is not held to the strict rules of evidence required in a court of law, such latitude does not warrant an abandonment of any and all stand-

ards and a determination which can only be regarded as stemming from the mere whim or caprice of the official. "Fair play" must be accorded and this connotes at least a moderate amount of proof. (*Matter of Heaney* v. *McGoldrick*, 286 N. Y. 38, 45.)

To sustain the action taken herein, or threatened to be taken, would require a departure from established standards and the acceptance of an "arrest" or a mere "summons" to answer an alleged violation — although unable to survive the scrutiny of the court room — as the equivalent of a conviction. The mere idea is abhorrent to our theory of government.

Further intimation of the character of the "hearing" given petitioner appears in the following extract from the stenographic record (pp. 9–10): "Mr. Moss: Well, I am going to deny your application for a pool parlor on the ground that it has been a menace to the City of Brooklyn; you have had all these arrests in there and we feel the people of Brooklyn should be protected the same as all other people. We should have closed you up before. Mr. Katz: Why should I get denied a license? Mr. Moss: You heard what the police officer said about the arrest? Mr. Katz: They have been tried in court and dismissed. Mr. Moss: There are some convictions. Mr. Katz: I never had a conviction. Q. How did you work it out that you never had a conviction? A. I never worked it out."

Concededly there is no property right in a license granted by governmental favor. Once given, however, it may not, save in exceptional circumstances not here present, be taken away at the option or whim of the licensor. Additional facts revealed by the moving papers add to the inequity of the situation. Petitioner, as stated, has held this license under annual renewals since 1930. Into the business he has put his life's savings, presumably, for him, a considerable investment. For aught that appears to the contrary, he is a reputable citizen and member of the community, a married man with three children, one of whom is now serving as a member of our armed forces overseas. He remains liable under a four-year unexpired term of his lease at a substantial rental, for the premises occupied by him are at a location on Pitkin avenue, which is as busy as Fulton street, Broadway or any of the most important thoroughfares in Brooklyn. Property values there are as high as in exclusive shopping centers anywhere in the city. It is difficult to conceive of such a location as an attractive hide-out or lure for criminals, unless all poolrooms may be so deemed. In that event, none

should be sanctioned. If the circumstances are otherwise, the police have proven singularly ineffective for, beyond abortive arrests which in themselves mean nothing, they have been able to establish nothing to the contrary in the past fourteen years.

The application is granted.