In the Matter of HENRY STERN, Respondent, against EDWARD T. McCAFFREY, as Commissioner of Licenses of the City of New York, Appellant.

First Department, March 11, 1952.

*Henry J. Shields* and *Seymour B. Quel* of counsel (*Denis M. Hurley, Corporation Counsel,* attorney), for appellant.

*Sidney Grossman* for respondent.

*Per Curiam.* The commissioner of licenses of the city of New York has been directed by the order appealed from to issue to petitioner a license for a newsstand on the sidewalk at 125th Street and Lenox Avenue, borough of Manhattan. The commissioner had denied the license upon the ground that petitioner was not qualified to obtain it under section B32–59.0 of the Administrative Code of the City of New York, which regulates the issuance of such licenses.

The general scheme of the statute is that preference is to be granted to applicants for newsstand licenses according to the following grades: (A) needy disabled veterans; (B) needy handicapped persons; and (C) other residents of the city. It is alleged by the commissioner that there is a waiting list of persons in grades A and B.

Petitioner is not a needy disabled veteran or handicapped person. He was licensed to operate the stand from 1945 to date

under the following circumstances: In 1926, a license was issued for the stand to petitioner's father, who was blind. After the death of the father about 1942, the license was issued to his widow, petitioner's mother, for several years. After the mother died in 1945, petitioner applied for and was granted a renewal of the license in 1945. He claimed to be entitled to it under subdivision f of section B32–59.0, which provides: " f. If a licensee under section B32–58.0 of the code shall die and leave surviving him a widow or other family dependents in need, such license shall continue in full force until its expiration for the benefit of such widow or dependents who may be given preference in the reissuance of such license."

At the time of his mother's death, petitioner was about forty years of age, apparently in good health and gainfully employed. For practically all of the period since, petitioner has been employed on a part-time basis in delivering publications by automobile which in 1951, when his last annual application for a renewal of the license was denied, paid him $67.50 a week plus $25 allowance for his automobile.

The commissioner determined that under the circumstances he did not qualify for a preference in receiving a renewal of the license over those in grades A and B aforesaid.

It seems to be the legislative scheme that licenses are not to pass unto the descendant of a former licensee as a matter of right, but such descendants qualify only in case of dependency. Petitioner attempts to take advantage of his being temporarily out of work when he applied in 1945 to establish dependency. He had been working steadily from 1928 and resumed the same job he had previously held shortly after his 1945 license was granted. The grant of the first application in 1945, whether the commissioner was warranted in granting it or not, did not afford petitioner any greater right to future licenses, which were required to be awarded in the order of statutory preference. The commissioner would be authorized upon the discovery of any improper granting of a license to refuse to renew it. If the final action was proper, it should not be disturbed by the court (*People ex rel. Finnegan* v. *McBride*, 226 N. Y. 252; *Matter of O'Brien* v. *Delany*, 255 App. Div. 385).

The courts may not interfere with the exercise of discretion by an administrative officer, unless his action is arbitrary or capricious. Clearly, the sole basis for a decision that the present action was arbitrary or capricious would be that petitioner was entitled to the license, as a matter of law, as a needy dependent of a former licensee. We think that the commissioner

was entitled to decide that this applicant was not such a needy dependent or legally entitled to the license under the present circumstances.

Petitioner lays great stress on the fact that the commissioner offered to issue the license to him if he would give up his other employment. We do not find that the case turns on the correctness or incorrectness of this offer. It is sufficient to hold upon all the facts that petitioner did not show a clear legal right to obtain the license.

The order appealed from should be reversed, with $20 costs and disbursements, and the motion denied.

PECK, P. J. (concurring for reversal). It seems to me that the action of the commissioner of licenses was within his legal authority and was not an abuse in administration.

VAN VOORHIS, J. (dissenting). The commissioner of licenses of the city of New York, appellant herein, has declined to renew petitioner's license for a newsstand at the corner of Lenox Avenue and 125th Street in the borough of Manhattan, which had been held and maintained by himself and his family for twenty-five years. After the commencement of this article 78 proceeding, the commissioner of licenses stated the ground for the refusal to renew petitioner's license, as follows: " After discussion at Executive Session it was decided that application for renewal would not be granted unless licensee had elected to resign from other gainful occupation."

It is undisputed that petitioner personally devotes at least eight hours a day to serving this newsstand. For the past twenty-three years he has supplemented his earnings from it by working part time for a publisher of sports news, as a car routeman. His gross salary from that corporation has varied from $18 to $67.50 per week. When renewal of his license was refused on March 31, 1951, he was earning the latter figure, but with a weekly take-home pay of $51.09.

The *Per Curiam* opinion fails to disclose whether the refusal to renew petitioner's license is being upheld upon the ground that he failed to establish need when the license was transferred to him upon his mother's death in 1945 — appellant's brief states that " that objection is not urged by the Commissioner of Licenses on this argument " — or whether, as contended by the commissioner, it is being decided that the circumstance of need must be established annually upon an application for renewal as before the issuance of an original license. The latter

point is of considerable moment, and is the only point pressed in the argument for reversal of the order.

The reason on account of which no point is made of what happened in 1945 is clearly that it did not enter into the decision by the commissioner, as is demonstrated by the circumstance that he determined to renew petitioner's license in 1951 if he would then abandon his outside employment. Manifestly what happened before was not regarded as a basis for the decision, nor can this court reverse the order appealed from on the ground that the license was erroneously issued to petitioner in 1945 without exercising the judgment of the commissioner in a manner contrary to the way in which he exercised it himself.

It would appear that aspersions cast upon petitioner by appellant are unwarranted. He assisted his blind father and his mother during their lifetimes after this newsstand license was issued to the former in 1926. After rendering his quota of work at the stand, he eked out the family income by further employment. The license passed into his name when his mother died in 1945. Petitioner was then for an interval of five months without any outside employment. At the present time he is more prosperous than ever before in his uphill existence. The gross revenue from the newsstand is about $65 per week, of which he pays $30 to a relief clerk who helps to keep it open during the long hours from 5:00 A.M. until 10:00 P.M. This relief clerk is elderly and otherwise unemployable. Petitioner personally operates the stand for at least eight hours a day on five days in the week, and for twenty-four additional hours on each week end. His outside work requires only about three hours per day on six days in the week.

By hard work and frugality, petitioner has succeeded in enabling his son to attend Long Island University. Petitioner is now forty-seven years old and is apparently not skilled in any other trade or occupation.

Under section B32–59.0 of the Administrative Code, initial preference in granting newsstand licenses is to be given to all persons who have operated such stands for one year prior to April 1, 1935, and to persons in need in and out of the military service; and, further, it is provided (subd. f) that " If a licensee  *  *  *  shall die and leave surviving him a widow or other family dependents in need, such license shall continue in full force until its expiration for the benefit of such widow or dependents who may be given preference in the reissuance of such license."

As just stated, petitioner was found to be in need when in 1945 he was licensed to operate this newsstand after his mother's death. No issue is presented on this appeal concerning whether the license was properly extended to him in 1945. Appellant's brief expressly disclaims any such contention, and bases the appeal on the existence of outside employment in 1951. He has not been required to show himself to be in need at the time of each annual renewal, nor is it thought that this is what the Administrative Code requires; it is not claimed to be the common practice regarding newsstand proprietors in the city. The requirement is that when such licenses are initially issued they be granted to those in need. If that requirement were interpreted to mean that each annual renewal thereafter was to be conditioned upon a continuing or recurrent need, a premium would be placed upon slothfulness and bad management. A corps of investigators would have to be maintained by the commissioner of licenses to check up on licensees as though they were on the rolls for public relief. No provision of law or regulation prohibits part-time outside employment, if the licensee gives adequate personal attention to the newsstand. There is no requirement that renewals shall be refused if the licensee accumulates savings, rendering him no longer in need, any more than if he works for several hours per day at outside employment. The rule has been stated thus in *Matter of Katz* v. *Moss* (184 Misc. 133, 136, affd. 269 App. Div. 854): " Concededly there is no property right in a license granted by governmental favor. Once given, however, it may not, save in exceptional circumstances not here present, be taken away at the option or whim of the licensor."

No basis has been assigned for depriving petitioner of his license except that he has been faithful to his stand and ambitious to work overtime at another job. He is not a large operator. There must be other licensees or concessionaires of space on the streets of New York City whose efforts have been crowned even less with failure. Are all of them also to lose their licenses, or is this petitioner to be discriminated against for his modestly successful career at this occupation?

Success rather than failure, it may be presumed, is to be regarded as the object of operating this or any other undertaking. A licensee must seek to acquire good will, and to merit the favor of regular customers. When a man has reached middle life, other occupations become progressively more difficult to start or to maintain, yet such a licensee would lose his occupation and be set adrift if he has laid by a competence for

illness or old age. Appellant's theory that a licensee must take the vow of poverty and prove each year that he has kept it, would preclude thrift and efficiency as well as outside employment, and prevent the accumulation of any reserve for declining years. The licensing power may well be meticulous in verifying the impecunious condition of an applicant when a license is first granted, but no such point as that is raised in defense to this petition.

In this case it would be pure speculation to assume that petitioner's outside employer would require more than the customary three hours per day of petitioner's time if he were to lose his license to operate a newsstand, or that he could extend his outside employment into some other field. If it were necessary to review the financial status of every licensee each year when his license is renewed, as though continuing a license to operate a newsstand were similar to granting public relief, a staff of investigators not provided by the city budget would constantly be verifying not merely whether licensees actually were engaged in outside work, but also whether they could support themselves by obtaining other employment if they exerted themselves to do so. If continuing need is to be the test of the right to hold a license to operate a newsstand, then the test would have to be the potentiality rather than the existing fact of another source of wages or income. It would be doing well enough to ascertain whether applicants are in need when licenses are first granted.

The order of the Special Term is right, and should be affirmed, with costs.

COHN, CALLAHAN and BERGAN, JJ., concur in *Per Curiam* opinion; PECK, P. J., concurs for reversal in opinion; VAN VOORHIS, J., dissents and votes to affirm, in opinion.

Order reversed, with $20 costs and disbursements to appellant, and the motion denied. Settle order on notice.