Vincent A. Lupiano, J.
The question to be decided is whether this article 78 proceeding is barred by the four-month Statute of Limitations provided in section 1286 of the Civil Practice Act.
The action was started by the service of the petition on the respondent Commissioner of Motor Vehicles on November 30, 1956 (Civ. Prac. Act, § 16). The relief sought, in substance, is an order directing the commissioner to revoke the suspension of the petitioner’s operator’s license and to renew it. The respondent cross-moves to dismiss the petition as barred by the Statute of Limitations.
In August, 1955, the petitioner submitted an application for renewal of his operator’s license which was to expire on September 30, 1955. On this application he affirmatively answered the question of whether he had epilepsy. On September 26,1955, or four days before it was to expire, he was notified that his operator’s license was suspended and would not be renewed. In March, 1956, in response to several written requests for reconsideration, the petitioner was directed to file a new application and to submit a report of his physicial condition from three neuropsychiatrists. The petitioner complied. On July 9, 1956, the respondent denied the application for a second time. However, in response to several written requests, he was informed on August 3, 1956, and September 14, 1956, that his application had been forwarded to the Board of Medical Advisers in Albany and was receiving “ continuing attention”, and pending “final disposition” his application and check were being held in New York. Finally, on September *657 26, 1956, and again on October 19, 1956, the respondent notified the petitioner that his application had been denied and that he might file a new application on October 18, 1958. The respondent argues that the decision of the commissioner to deny renewal became final in September, 1955, and therefore this proceeding is barred by the four-month Statute of Limitations provided in section 1286 of the Civil Practice Act. The petitioner contends that at the time of the suspension of his license in September, 1955, he was not given a hearing pursuant to subdivision 3 of section 71 of the Vehicle and Traffic Law of New York and since this constitutes a continuing wrong, the Statute of Limitations is not a bar. He further contends that the respondent’s decision to deny renewal of his license did not become final until at best September 26, 1956, and therefore this proceeding was timely instituted.
It appears that at the time of the suspension there remained but four days before the license expired. While it is true that the petitioner was not accorded a hearing, provided for by statute, such action would have been an empty gesture at most. The denial of the application for a three-year renewal, effective four days later, rendered the question of the suspension academic. Furthermore, subdivision 5 of section 20 of the Vehicle and Traffic Law of New York does not provide a hearing upon an application for renewal. The court has continually refused to entertain proceedings under article 78 of the Civil Practice Act to determine moot questions where no practical result would follow (People ex rel. Greer v. Common Council of Troy, 82 N. Y. 575; Horton v. Cantwell, 108 N. Y. 255, 269; People ex rel. Keating v. Bingham, 138 App. Div. 736, appeal dismissed 200 N. Y. 511; Matter of Petersen, 112 N. Y. S. 2d 52). Accordingly the petitioner’s contention that the denial of a hearing on the suspension was a continuing wrong and therefore this proceeding is not barred by the Statute of Limitations is without merit.
There remains the question of whether the Statute of Limitations bars the court from reviewing the denial of the commissioner to renew the petitioner’s operator’s license. Subdivision 5 of section 20 of the Vehicle and Traffic Law confers authority upon the commissioner, in his discretion, and without a hearing, to issue and renew operator’s licenses. This action involves a determination involving judgment or discretion as distinguished from ministerial action in accordance with law (Matter of Derouchie v. Kelly, 1 A D 2d 921; Matter of Katz v. Moss, 184 Misc. 133, affd. 269 App. Div. 854; Matter of Foy v. Brennan, 285 App. Div. 669, 673). The statute also provides *658 for judicial review “by a proceeding under article seventy-eight of the civil practice act ”. Such review must be instituted within four months after the determination becomes final and binding upon the petitioner (Civ. Prac. Act, § 1286). The issue, then, is when did the refusal of the commissioner to renew the petitioner’s license become final. Concededly there was such a refusal in September, 1955. However, in March, 1956, there was a written request by the commissioner for the petitioner to file a new application and a request to submit proof of his physical fitness by three neuropsychiatrists. While it is true a request to reconsider a final administrative determination does not toll the Statute of Limitations (Matter of Hall v. Leonard, 260 App. Div. 591, affd. 285 N. Y. 719), if the respondent did, in fact, entertain the request for reconsideration and did reopen the case to receive additional evidence, the four months’ period would begin the run from the date of one of the respondent’s more recent determinations and hence this proceeding may be timely (Francisco v. O’Connell, 79 N. Y. S. 2d 543). In this respect, the case at bar is distinguished from Matter of Hall v. Leonard (supra); Matter of Hecht v. Kern (178 Misc. 571); Morgenstein v. Arnstein (43 N. Y. S. 2d 243) and Matter of Italian Hosp. Soc. v. State Dept. of Social Welfare (178 Misc. 183), where reconsideration was sought based upon the same facts as originally presented, and the proceedings were not reopened to receive new evidence.
There does not appear to be any statutory requirement in the Vehicle and Traffic Law or regulations thereunder for an administrative appeal, rehearing, reconsideration on new evidence, or requirement to exhaust administrative remedies, to guide the court in determining whether the action of the commissioner in March to permit the introduction of new additional medical evidence was a reopening of the case or merely a reconsideration of the former determination (Matter of Perotta v. Gregory (4 Misc 2d 769). There does appear, however, to have been an informal administrative change in procedure within the Bureau of Motor Vehicles subsequent to the petitioner’s original application for renewal in September, 1955. At that time, apparently, an affirmative answer to the question of epilepsy was sufficient basis for the commissioner to deny renewal. Subsequent thereto, the Motor Vehicle Bureau, upon such an affirmative answer, would furnish an applicant with an additional mimeographed form to execute which required him to furnish a medical report from three neuropsychiatrists and furnish waivers of the doctor-patient privilege. In addition, there appears to have been established in 1956 a medical *659 advisory board to assist the commissioner in reaching his determination (see L. 1956, ch. 180, vol. 1, p. 809). From this it is apparent that the petitioner’s ease was one caught in this procedural changeover, and the proceeding was therefore reopened to permit him to avail himself of the new requirement and present medical evidence in his own behalf. Furthermore the petitioner’s condition was not a permanent one, but like all physical disabilities subject to cure, change, or improvement. In the absence of administrative procedures or codified regulations, where the facts upon which the determination is based are constantly subject to change, the question of the finality of an administrative decision based thereon must be construed in favor of a petitioner. In this respect it differs from other article 78 proceedings where the determination is based upon a permanent state of facts such as a prior conviction or a determination based upon violations or infractions of the Motor Vehicle Law. This fact of possible change in physical condition has now been acknowledged by the Motor Vehicle Bureau and a new procedure formulated. A new application claiming an improvement or cure of the physical disability of epilepsy may now only be entertained two years from the previous final determination. This does not seem to have been the procedure at the time of petitioner’s original application for renewal. Upon the foregoing, it appears that the decision of September 26,1955, was abandoned. If this is so, the action of the commissioner in requesting the petitioner to file a new application with new evidence of his physical condition in March, 1956, would then constitute a reopening of the hearing upon new evidence and therefore the Statute of Limitations would begin to run from the date of the final determination subsequent thereto. All this deserves further inquiry, however.
Furthermore, the application of March, 1956, was apparently denied on July 9, 1956. But on September 14, 1956, the commissioner notified the petitioner that the matter of his license was receiving “ continuing attention ” and had been referred to the Medical Board of the Bureau of Motor Vehicles and his application was being held in New York “ pending final determination ”. On September 26, 1956, the petitioner was notified that his application was denied and on October 19, 1956, he was informed that any new application filed within two years from that date would not be considered. This proceeding was started within four months of September 26, 1956, but not within four months of the July 9 denial. Assuming that the decision of September, 1955, was abandoned, the question remaining, then, is whether the denial of July 9,. 1956, is the final deter- *660 initiation from which the petitioner should have sought review under article 78, or whether the letter of September 14, 1956, which speaks of “ continuing attention ” “ pending final determination ’ ’ is sufficient to make the denial of September 26, 1956, or October 19, 1956, the true final determination. And further, assuming the July 9 denial was the true final determination would the notification that the application was thereafter receiving continuing attention estop the respondent from now raising the Statute of Limitations as a bar to this proceeding.
Upon all the papers before it, the court is unable to resolve these questions without more complete knowledge of the facts and circumstances surrounding the exchange of letters. It' would seem therefore that this is a triable issue. The respondent’s cross motion to dismiss is brought pursuant to section 1293 of the Civil Practice Act. The respondent has failed to affirmatively sustain, at this time, the burden to prove that this petition is barred by the Statute of Limitations. Accordingly, the cross motion is denied without prejudice to renew upon additional facts disclosed from the pleadings or upon facts appearing upon the trial or hearing (Anderson v. Brown, 273 App. Div. 940). Leave is granted to serve and file an answer within 20 days after service of a copy of the order entered hereon. Settle order.
(On reargument, June 20, 1957.)
Motion for reargument is granted and upon reargument the original decision is adhered to. The respondent excepts to that part of the court’s opinion which holds “ While it is true a request to reconsider a final administrative determination does not toll the Statute of Limitations * * * if the respondent did, in fact, entertain the request for reconsideration and did reopen the case to receive additional evidence, the four months’ period would begin to run from the date of one of the respondent’s more recent determinations and hence this proceeding may be timely.”
He argues that after the formal exhaustion of administrative remedies, where a reconsideration is granted only by virtue of an agency’s inherent power, the reconsideration does not toll the running of the Statute of Limitations from the time of the original determination.
The only appellate authority he cites to support this position is Matter of Nachbar v. Bruckman (249 App. Div. 723). Significantly, in that case no new evidence was presented and the court adhered to its original decision, Mr. Justice McLaitgh *661 list's unpublished lower court opinion merely held, “ There was no rehearing on February 26, 1936. There was a denial of any rehearing. The four months’ period began to run on January 22, 1936.” The Appellate Division affirmed without opinion. Matter of Mottsman & Co. v. State Liquor Auth. (174 Misc. 41) followed the Nachbar case. Apparently in the latter case the petitioner submitted some additional evidence in consideration of an application for a rehearing. The commissioner found that the evidence did not warrant a reopening of the proceeding for a rehearing and the original determination was adhered to. In Matter of Mallen v. Morton (199 Misc. 805) the preceeding was not reopened for the purpose of presenting additional evidence. In Matter of Canzano v. Hanley (188 Misc. 167) an application for a rehearing was denied.
These cases only point up the tautological meaning of the proposition of law which the respondent now urges upon the court. For where, as in this case, there was no statutory prohibition to the petitioner to file a new application subsequent to the initial refusal to renew his license, such new application could very well be labeled one for a new administrative proceeding, a request to reconsider a prior determination, an application for reargument based upon new evidence or one to reopen an administrative proceeding for the purpose of taking new evidence. Therefore the determination as to whether a petition to review an administrative ruling, made after a prior adverse ruling, is time barred must be based upon something more definitive than the mere labeling or naming of later procedure. Consideration must be given by the court to any newly presented evidence. Consideration must also be given as to whether the administrative agency intended and whether, in fact, made a new determination notwithstanding that such new decision coincided with a previous one. In a word the final emphasis should be placed upon the nature, not the naming of the subsequent procedure.
Unless a new application is considered in this manner, a petition might be precluded from judicial review of any action by the Bureau of Motor Vehicles. For example, had the petitioner waited three years and then applied for renewal based upon new medical evidence with the commission adhering to its original decision that the petitioner had epilepsy, judicial review of the renewed application, according to respondents, would still be barred by the Statute of Limitations, as it is merely a request for reconsideration. Clearly, this rationale is incorrect. And it must also be kept in mind that while the decision of October 19, 1956, speaks about a two-year waiting *662 period before a new application for renewal may be filed, the original decision did not contain such prohibition.
In all the cases cited by the respondent, it appears that any new evidence submitted was so inconclusive that the commission merely reverted to its original decision. In contrast, the commission herein had reached its original determination without the benefit of any medical evidence save petitioner’s own admission that he had epilepsy. Six months later permission was granted to file a new application with accompanying medical proof. The decision that ensued would preclude the petitioner from filing anew, at least until he is completely free from spells or seizures for two years from October 19, 1956. This latter disposition may be the final determination, separate and distinct from the original determination, which the petitioner seeks to have reviewed. Sufficient appears, it seems, to merit such judicial inquiry. Settle order.