Samuel H. Hofstadter, J.
On March 20, 1958, petitioner, who is an attorney, pleaded guilty of speeding on the Hutchinson River Parkway on March 12, 1958. On July 8, 1959, he pleaded guilty of speeding on the Bronx River Parkway on June 21, 1959. On October 20, 1959, he was found guilty, after trial, of speeding in the Village of Suffern on July 27, 1959. On November 27,1959, he received notice from the Bureau of Motor Vehicles that his driver’s license had been revoked. Under sec *862 tion 71 (subd. 2, par. c) of the Vehicle and Traffic Law, a license “ must ” be revoked when the licensee is convicted of speeding three or more times within a period of 18 months (Matter of MacLean v. Kelly, 12 Misc 2d 209, affd. on opinion below, 9 AD 2d 9821.[1]
In this article 78 proceeding, petitioner seeks to annul the mandatory revocation of his driver’s license. By cross notice, the respondent moves to dismiss the petition for insufficiency. The motion is granted and the petition is dismissed.
Persistent speeders, heedless of their own welfare, and senseless to that of the innocent — young and old alike — may legally be deprived of their privilege to drive (People v. Rosenheimer, 209 N. Y. 115, 121; Matter of Wignall v. Fletcher, 303 N. Y. 435; Matter of Moore v. Macduff, 309 N. Y. 35; Matter of Astman v. Kelly, 2 N Y 2d 567; Matter of Hubbell v. Macduff, 2 N Y 2d 563). For, operating a motor vehicle on the public highway is not a right (People v. Rosenheimer, supra). It is a license granted on condition that the licensee complies with the reasonable regulations laid down by the State (Reitz v. Mealey, 314 U. S. 33, 36).
It is of great value and should be treated as such. But revoked it may be, if the privilege is abused![2]
In 1923 we had 15 million registered cars in the United States. By 1956 they had increased to 60 million. By 1970, they are expected to total 90 million (Beport of Joint Legislative Committee on Motor Vehicles and Traffic Safety, N. Y. Legis. Doc. 1959, No. 55, p. 24). When the automobile first appeared on the scene, it stirred the imagination as a marvel of the inventoras art; today it is a commonplace part of our daily life. Automobiles are everywhere; highways, thruways and parkways have been and are being constantly built to facilitate their movement and speed — the lawful limit of which has been progres *863 sively increased. If the automobile is not to be converted ever more into an engine of destruction rather than an agent of social utility, we must insist — unceasingly and increasingly — on the most stringent regulation and the most rigid enforcement of rules designed to assure careful driving and resultant safety for the community and all the inhabitants thereof. And 41 the licensing system is the keynote of all the legislative safeguards deemed necessary to protect the public against death or mutilation”. (People v. Duell, 1NY 2d, 132, 134.) The right to continued possession of a driver’s license is not absolute — it is conditioned upon responsibility for the person and property of others. On this correlation of privilege and duty is predicated the hope of millions of our people for safety and protection from a machine at once marvelous and necessary, and potentially lethal.
An eminent student of traffic safety tells us: “Of all the possible causes of traffic accidents, the driver gives us the most concern. Authorities claim he is responsible for 80 to 90% of all accidents — some would say as high as 96% (Dr. James L. Malfetti, Traffic Safety, the Driver and Electronics, Teachers College Record, vol. 61, No. 2, Nov. 1959, p. 99).
In 1958, almost 13,000 persons lost their lives because the drivers exceeded the legal speed limit. In the same year, injuries to almost a million more were traced to the same cause (The Luckless Legion, 1959, Travelers Ins. Co., p. 4). Since the automobile first appeared on the American scene, the ranks of the crippled and the dead have included more than 60,000,000 (p. 14). Speeding was responsible for 43% of the killings. It is answerable for over 40% of the mangled (p. 4). To reduce the carnage, speeding must be stopped.
In our own State, the Bureau of Motor Vehicles advised the Legislature (N. Y. Legis. Doc. 1958, No. 113, p. 13): “Motor Vehicle accidents rose to a new high in this State during 1957, reaching a total of 409,804, or nearly 6% above the 1956 experience. Accidents involving personal injuries showed an alarming increase, rising to 162,523, almost 14% above the previous year.”
The statistics in their total impact shock the conscience. Each is an overwhelming tragedy to the victim and his family.[3] *864 Almost 40,000 people annually have died on United States highways in recent years and the grim prophecy has been uttered that unless a major scientific breakthrough is made in traffic safety research, by 1975 this will have increased to 55,000 people a year (Hon. Kenneth A. Roberts, Problems of Traffic Safety, in pamphlet entitled Electronics Controls and Traffic Safety, Teachers College, Columbia University, pp. 74-75). In Congressman Roberts’ phrase: the modern automobile is miraculous, [1] ‘ and yet, it is a machine which, unfortunately: Has no brain — Has no heart — Has no conscience — Has no loved ones to lose if it is transformed from an engineer’s delight into a tangled twist of metal.”
The driver — and the driver alone — controls its destiny in practically all eases. Legally — and morally — his license may be used only within the prescribed limitations. When so used that it may endanger others, it is properly revoked. As the Appellate Division of the Fourth Department recently observed: “ An examination of section 71 (subd. 2, par. [c] of the Vehicle and Traffic Law) reveals rather clearly the legislative intent. In the event that an operator is ‘ convicted ’ of certain crimes or offenses the Commissioner is mandated to revoke the license. The purpose thereof is not primarily to impose increased punishment upon the motorist. It is to remove from the highways those operators of motor vehicles who by their conduct (criminal negligence, driving while intoxicated, reckless driving and speeding) have shown that they are a potential hazard to the person and property of others.” (Matter of Jones v. Kelly, 9 A D 2d 395, 400.)
Petitioner was convicted 3 times of speeding within an 18-month period. The first and second convictions are not under attack. We are here concerned with the third, based on a verdict after trial.
Petitioner challenges the order of revocation on the ground that though the Suffern Justice of the Peace was informed that the offense charged was the third such offense, he failed ‘ ‘ to strictly comply with Section 335-a of the Code of Criminal Procedure, to wit, requiring upon arraignment in open Court, that the Magistrate must inform the defendant that a conviction subjects him to a suspension or revocation of his license ”.[4]
*865 What constituted such failure “strictly” to comply is not alleged. (It is not alleged that petitioner appealed from the judgment of conviction or otherwise sought to upset it.) Nor is it alleged that the traffic summons did not contain the caveat that conviction might result in suspension or revocation of petitioner’s license — which, under the statute, is equivalent to the requirement that the Magistrate must inform the defendant of the effect of a third conviction.[5]
Petitioner here received a traffic summons. As just noted, his amended petition does not allege that it did not contain the warning set out in section 335-a. "Wholly apart from the fact that his allegations of the action of the Magistrate are purely conclusory, his failure to allege that the summons did not provide the prescribed notice renders the petition fatally defective (MacLean v. Kelly, supra). But, concerned lest the omitted allegation was inadvertent, I have examined the documents submitted, solely to determine whether petitioner should be given the right to further amend his petition. A photostatic copy of the summons is among these documents. In fact, it includes the warning prescribed in the Criminal Code section.
On November 24, respondent had before him the trial court’s certificates establishing both the conviction and compliance with section 335-a of the Code of Criminal Procedure. Respondent could properly make his determination upon these certificates in his file (Matter of Fink v. Cole, 1 N Y 2d 48; Matter of Gross v. Macduff, 284 App. Div. 786; Matter of Goodfellow v. Kelly, 6 A D 2d 962).
But petitioner argues that the Suffern Justice of the Peace Court did not submit its certificate of the conviction to the Commissioner of Motor Vehicles until November 24, 1959; and did so only after this proceeding had been instituted in respect of *866 an earlier suspension of his license,[6] and after the Attorney-General’s office had requested submission of the certificate. His contention is that such late certification violates section 70 (subd. 11, par. d) of the Vehicle and Traffic Law, and may not constitute the foundation for revocation of his license. Concededly, the certificates submitted by the court set forth both the conviction and compliance with section 335-a of the Code of Criminal Procedure. Petitioner argues that the late submission of the certificates deprived them of their efficacy.[7]
Subdivision 11 of section 70 provides for submission of the certificates within 48 hours after conviction. In petitioner’s ease, it was submitted more than a month thereafter. But the delay did not change the facts; and the facts, not the date of their submission control. Innumerable reasons may make for unintended delay of more than two days. Failure to assort guilty pleas in a busy urban court, a mislaid file, the informality of the proceedings of a Justice of the Peace Court, come easily to mind. The delay is not jurisdictional; and the two-day provision in section 70 is directory only (Matter of Ohmann v. Harnett, 168 Misc. 521, 523).
*867 It is unthinkable that the Legislature intended to suffer multiple offenders to frustrate the complex legislative plan of license control by such specious pleas as have been made here. Petition dismissed.

. When revocation is mandatory, there is no statutory or implied right to a hearing before the Commissioner (Matter of Nelson v. Kelly, 4 A D 2d 596, 598; Matter of Drasin v. Kelly, 6 A D 2d 453, 455). Nor may the conviction itself be collaterally attacked (Matter of Goodfellow v. Kelly, 6 A D 2d 962, 1018). The subdivision is constitutional (Matter of Cadioux v. Macduff, 1 A D 2d 360, appeal dismissed 1 N Y 2d 827; Reitz v. Mealey, 314 U. S. 33, 36; Matter of Ohlson v. Mealey, 179 Misc. 13, 16).

. Once issued it has the attributes of a vested property right (Matter of Moore v. Macduff, supra) and may be revoked only by due process (Matter of Wignall v. Fletcher, supra). Section 335-a of the Code of Criminal Procedure and review of revocations of licenses under article 78 of the Civil Practice Act, provide such due process (People v. Duell, 1 N Y 2d 132; Matter of Arcuri v. Macduff, 286 App. Div. 17; followed Matter of Johnson V. Kelly, 2 A D 2d 213).

. A single example will suffice: On February 6, 1960, a 69-year-old woman was killed by a car. She had been caring for eight grandchildren since the death of their mother in a similar accident last September. The grandchildren ranged in age between 2 and 12. Their father said that there was little chance of keeping the family together now (New York Times, February 7, 1960). The thrust of two automobiles had destroyed two human beings, had orphaned eight, and broken up a family of 11.

. Section 335-a of the Code of Criminal Procedure provides:
“ The magistrate, apon the arraignment in this state of a resident * * * before accepting a plea, must inform the defendant at the time of his arraignment in substance as follows:
“ A plea of guilty to this charge is equivalent to a conviction after trial. If you are convicted, not only will you be liable to a penalty, but in addition, *865 your license to drive a motor vehicle or motor cycle, and your certificate of registration, if any, are subject to suspension and revocation as prescribed by law.
“The giving of the foregoing instructions by means of a statement printed in bold red type in a size equal to at least twelve point type, upon a summons or ticket issued to a person charged with any such violation shall constitute compliance with the requirements of this section.”

. In 1954, the Legislature added the third paragraph to section 335-a providing for the printing of the caveat on the summons (L. 1954, ch. 664). With the addition of this paragraph, the warning may be given by alternative means. Those offenders who receive traffic tickets must be warned of the possibility of suspension or revocation of their license either on the ticket or by the Magistrate. Those offenders who are arrested, must be warned by the Magistrate. Either warning is sufficient (Matter of Tepper v. Kelly, 5 Misc 2d 1019; see, also, Matter of Craft v. Kelly, 7 A D 2d 461, 462-463).

. Three days prior to the trial of October 20, petitioner’s license had been suspended for failing to appear on the return date of the traffic ticket issued to him on July 27. His explanation is that the officer had informed him that appearance was not necessary provided he forwarded a money order for $15 to satisfy the violation; and that he forwarded the money order. For the purpose of the cross motion, I accept the explanation (Matter of Emray Realty Corp. v. Stoute, 6 Misc 2d 365; Matter of Gulotta v. Kelly, 8 Misc 2d 721) although obviously the officer had no right to give the proffered advice nor petitioner to rely upon it (cf. Matter of Arcuri v. Macduff, 286 App. Div. 17, 21, vacated as moot 1 A D 2d 733; Matter of Johnson v. Kelly, 2 A D 2d 213, 215). Assuming the validity of the order of revocation, however, the order suspending petitioner’s license has been superseded; and the issue whether the suspension should be lifted, is moot (Matter of Nelson v. Kelly, 7 Misc 2d 655, 657, revd. on other grounds 4 A D 2d 596).

. Failure to comply with section 335-a of the Code of Criminal Procedure at the time of arraignment is jurisdictional (Matter of Sitts v. Mealey, 173 Misc. 82; Matter of Ohmann v. Harnett, 168 Misc. 521). Absent compliance with the section, the license may not be revoked (Matter of Arcuri v. Macduff, supra, p. 22; Matter of Vas Christoff v. Kelly, 8 A D 2d 687); or if revoked, must be restored (Vehicle and Traffic Law, § 71, subd. 6).
The section is applicable whether the plea is guilty or not guilty (Matter of Hubbell v. Macduff, 2 N Y 2d 563, supra). “ Where section 335-a has not been complied with, the defendant, at his option, may attack the validity of the conviction in the criminal proceeding or he may allow the conviction to stand and challenge its use as the basis for revocation or suspension under the Vehicle and Traffic Law” (Matter of Arcuri v. Macduff, 286 App. Div. 17, 22).