Cooke, J.
Within an 18-month period, petitioner Mark Horodner was thrice convicted of speeding, which convictions served as the basis for the September 28, 1972 revocation of his driver’s license. On January 2, 1973, Horodner was charged with a misdemeanor for driving while his license was revoked. His guilty plea, entered in the District Court of Suffolk County on September 19, 1973, resulted in a judgment of conviction, the appeal from which was dismissed on June 5, 1974 for lack of prosecution. Meanwhile, by an order to show cause dated October 9, 1973, petitioner brought on this article 78 proceeding to set aside the revocation as well as to stay sentence on the misdemeanor conviction.
Petitioner, by this proceeding, does not seek to collaterally attack his District Court conviction. Rather, petitioner seeks review of the revocation itself, alleging that prior to such revocation the due process requirements of notice and hearing must be met. In order for this court to properly reach the constitutional issue, it is necessary that we convert this article 78 proceeding into a declaratory judgment action (see Matter of Merced v Fisher, 38 NY2d 557) and, once having effected the conversion, we thus proceed.*
Section 510 of the Vehicle and Traffic Law provides, inter alia, for the mandatory revocation of a driver’s license where the holder has been convicted of three speeding violations within a period of 18 months (Vehicle and Traffic Law, § 510, subd 2, par a, cl [iv]). While New York courts have considered the constitutionality of section 510 in years past (Matter of Barton v Hults, 23 Misc 2d 861; Matter of Cadieux v Macduff, 1 AD2d 360, app dsmd 1 NY2d 827), they have not done so in light of the United States Supreme Court decision in Bell v Burson (402 US 535). The earlier cases, relying on the "right-privilege” distinction (People v Rosenheimer, 209 NY 115, 121), viewed the possession of a driver’s license as a privilege which could be revoked in the absence of due process procedures (Matter of Barton v Hults, supra, pp 862-863; People v Rosenheimer, supra).
The Supreme Court in Bell v Burson, in reasserting the demise of the distinction, stated that (p 539) "[o]nce licenses *683 are issued * * * their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. Sniadach v. Family Finance Corp., 395 U. S. 337 (1969); Goldberg v. Kelly, 397 U. S. 254 (1970). This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right’ or a 'privilege’ ”. Bell held Georgia’s Motor Vehicle Safety Responsibility Act unconstitutional. Said act provided that the registration and driver’s license of an uninsured motorist involved in an accident could be suspended for failure to post security to cover the amount of damages claimed by the injured parties in the accident without a prior hearing on fault or liability. While the Georgia statute contemplated a hearing, it was only to determine whether the individual or his vehicle had been involved in an accident and whether he was "financially responsible”. The court indicated that, except in emergency situations, when a State seeks to terminate an interest such as that here involved, it must afford "notice and opportunity for hearing appropriate to the nature of the case before the termination becomes effective” and that, under Georgia’s statutory scheme, the State "must provide a forum for the determination of the question whether there is a reasonable possibility of a judgment being rendered against * * * [an individual] as a result of the accident.” (402 US 535, 542, supra.)
Early on, it must be noted that while the purpose of a financial responsibility statute such as that in Bell is to obtain security from which to pay a possible judgment against the licensee resulting from an accident, the purpose of a statute such as section 510 of the Vehicle and Traffic Law is to promote traffic safety. Other jurisdictions have had statutes akin to 510 challenged on due process grounds and while there has been a similarity in the questions raised, there has been a divergence in result (compare Stauffer v Weedlun, 188 Neb 105, app dsmd 409 US 972; Abraham v State of Florida, 301 So 2d 11, app dsmd 420 US 941; with Reese v Kassab, 334 F Supp 744, cert den 414 US 1002; see, generally, Necessity of Notice and Hearing Before Revocation or Suspension of Motor Vehicle Driver’s License, Ann., 60 ALR3d 361).
*684 In Stauffer v Weedlun (supra), the Nebraska Supreme Court held that a statute which provided for mandatory revocation of a driver’s license upon accumulation of 12 or more traffic violation points satisfied due process requirements in the absence of statutory provision for notice and hearing. In Stauffer, reliance was placed upon the Jennings v Mahoney (404 US 25) resolution—that by staying the license suspension pending a court-ordered hearing, the appellants had, in fact, been afforded due process. Based upon that finding, the United States Supreme Court in Jennings did not reach the question of the constitutionality of the statute itself. Comparing the circumstances in Stauffer to those in Jennings, the Nebraska court likewise found that due process had been afforded. The Stauffer court placed its holding upon the additional ground of the emergency exception, referred to, but not applied, in Bell (402 US, at p 542). The policy, purpose and procedures behind mandatory and automatic revocation for traffic violations under the point system differed sufficiently from that for revocation under the financial responsibility act so that the former could be viewed as a legislative attempt to deal with an emergency situation, while the latter could not. This latter type statute is an attempt to protect the public against judgment-proof drivers but, without a hearing as to fault, carries with it the possibility of wrongfully depriving the motorist of a valuable entitlement. In Bell, such State interest was not deemed sufficient to outweigh an individual’s right to a due process hearing. The former type statute, by its very nature, is different, in that as points are accumulated the driver is informed and aware of the consequences thereof. Each conviction, for which points are given, has its due process elements. The policy served by such a statute is to help assure that recidivist traffic offenders are prohibited from traveling the highways. "The compelling public interest in removing from the highways those drivers whose records demonstrate unsafe driving habits outweighs the need for notice and hearing prior to the order to protect the individual against mistake” (Stauffer v Weedlun, 188 Neb 105, 114, supra; see State v Sinner, 207 NW2d 495 [ND]). Significantly, the appeal in Stauffer was dismissed by the United States Supreme Court "for want of substantial federal question” (409 US 972).
Section 510 of the Vehicle and Traffic Law bears greater similarity in provision and purpose to the statute scrutinized in Stauffer than to that in Bell and, accordingly, a similar rationale may be adopted.
*685 A New York driver, as petitioner herein, having been convicted for speeding on three occasions within a period of 18 months, has been entitled on each conviction to notice and hearing. Notably, subdivision 7 of section 510 provides that revocation is not to be effected if the revoking official is satisfied that the Magistrate who pronounced the judgment of conviction failed to comply with subdivision 1 of section 1807 of the Vehicle and Traffic Law. Said latter section requires that a warning be given to the motorist as to the effect of a conviction upon revocation or suspension of his driver’s license.
On notice of revocation, petitioner may seek a stay and, by way of an article 78 proceeding (CPLR 7803, subd 3), challenge the action taken. Subdivision 7 of section 510 provides that such act of revocation shall be deemed administrative for purposes of judicial review. On review, petitioner may challenge the action on grounds such as: (1) misidentification of the person subject to one or more of the convictions; (2) reversal or dismissal on appeal of one or more of the convictions; and (3) miscalculation of the time within which the convictions occurred.
This court, as did the Nebraska Supreme Court in Stauffer, takes the position that what we are presented with is an emergency situation. We recognize that the Legislature intended by such revocation to remove from the roads of our State drivers who, by their conduct, have been found to have repeatedly placed their own personal interests above those of the rest of the citizenry. In such situation the due process protection of an article 78 proceeding suffices.
Similar due process questions raised in Matter of Sanford v Rockefeller (35 NY2d 547) and Matter of Tappis v New York State Racing & Wagering Bd., Harness Racing Div. (36 NY2d 862) were resolved in this manner.
We therefore affirm the order of the Appellate Division, declaring section 510 of the Vehicle and Traffic Law to be constitutional.
Order affirmed, without costs.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order affirmed.

 We wish to express our gratitude to the Association of the Bar of the City of New York for submitting its excellent amicus curiae brief.